This is a suit to recover the damages arising from an alleged negligent or unskilful repair job done on plaintiff's automobile by the defendant's garage. Plaintiff alleges that on March 26, 1948, he placed his automobile with the defendant for inspection of the steering mechanism, and with instructions to make all necessary repairs thereto; that while in the garage of the defendant, necessary repairs were made to the front steering system, including the installation of the two tie rod ends, at a total cost of $13.76, which has been paid by petitioner; that on the same date, March 26, 1948, at about 1:00 P.M., the car was returned to petitioner by defendant under representation of having been properly inspected, repaired and ready for use; that at about 2:30 P.M. on the same date, relying on such representation, petitioner drove the car to Columbia, Mississippi, on an excellent hard surface highway and arrived there at about 6:00 P.M., where he spent the night with his father-in-law; that the next morning, at about 9:00 A.M., he drove the car from Columbia *Page 917 
along a gravel road known as the Bunker Hill Road, and as he had proceeded about three miles from Columbia, traveling approximately thirty to thirty-five miles per hour, and as he saw a bus approaching from the opposite direction, he lost control of his automobile because it would not steer properly, and as a result thereof, in spite of applying his brakes gradually, he went from his own right side where he had been driving, to his left side, and ran into the bus, striking it at the front and near the door of the driver, and scraping along the side of the bus to the rear. Plaintiff attributes the loss of control of his car and the resulting collision to the failure of defendant's agents or employees to properly connect the tie rod.
As a result of the accident, he claims damages of $105.70, which he paid to the owner of the bus for damage to the bus and for which he received a subrogation, $500 for the damage to his own automobile, $300 for his personal injuries, and $700 for the aggravation of a prior wartime nervous condition, making a total claim of $1605.70.
The defendant in his answer, admits that plaintiff's car was placed with him on March 26, 1948 for certain repairs and that it was returned to him at about 1:00 P.M. on March 26, 1947 (1948), after making the repairs authorized by the plaintiff. He denies all the other material allegations of the petition, and further answering, alleges that the repairs authorized by plaintiff, were done expertly by an experienced mechanic, installing new parts of approved quality, including cotter pins; and that all parts were checked by the mechanic as he went along and at the conclusion of the job; that if plaintiff was in any collision, it was due to his fault and negligence, and not to any fault or negligence of the defendant.
After trial of the case, the trial judge rendered judgment in favor of the plaintiff in the sum of $468.22, "being the amount of the property damage sustained by plaintiff," together with legal interest from judicial demand and all costs. The defendant has appealed. The plaintiff has answered the appeal, praying that the judgment be increased by $400 to cover the pain, suffering and shock sustained by the plaintiff in the collision.
The general rule which has to be applied in cases of this type is succinctly set forth by the following: "As to actionable negligence in cases of this kind, the general rule is that one who contracts to repair or service an automobile is liable for any damages proximately resulting from the the negligent or unskilful manner in which he makes the repairs or performs the services." 24 Am.Jur. page 491, Garages, etc. Section 24, Defective Repairs.
This general rule is in accord with our Civil Code, Article 2316, which states: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
The evidence consists of the testimony in open court of plaintiff, and of Joel W. Snell, a mechanic, plaintiff's brother-in-law, and of the depositions of Rossie Turnage and Ridgie Stamps, on behalf of plaintiff; and the testimony of the defendant and of Clay Weber, William B. May, and Anthony Polito on behalf of the defendant.
The plaintiff states that (as shown by the pleadings) on March 26, 1948, he took his car to defendant's garage for inspection of the steering mechanism and repair thereof; that he informed defendant that the car did not steer properly and that since he was going to take a trip, he wanted it inspected and any necessary repairs made; that at 1:00 P.M. on March 26th, the car was delivered to him as being in good condition and that he thereupon paid his bill and drove off; that that afternoon, he drove to Columbia, Mississippi, arriving there at about 6:00 P.M., and that the next morning, at about 9:00 A.M., he drove the car along a smooth gravel road, and after reaching a point about three miles away from Columbia, and while approaching an oncoming bus, he found that the steering was bad and lost control of his car; that when he lost control, he was on his righthand side, driving about thirty to thirty-five miles per hour, and that he thereupon gradually applied his brakes, but was unable to stop the car or to keep it from *Page 918 
going to the left and colliding with the bus which was approaching from the opposite direction; that he struck the bus with his left front on the left front of the bus near the driver's door, and that his car scraped along the bus and stopped almost immediately; that after the collision he noticed that the left tie rod was underneath the front part of his car and had fallen off completely, and that he thereupon attributed his loss of control of the car to the fact that the tie rod fell off.
Joel W. Snell, a mechanic of twenty years of experience, testified as to the manner of replacing a tie rod. He stated that where a tie rod was properly placed and the bolt holding it was screwed properly, it should not fall off and that in the event that a cotter pin was placed also, as is the custom, it would be impossible for the tie rod to fall off.
The other mechanic who testified for plaintiff was Ridgie Stamps, who examined the car at Columbia Motors in Columbia, shortly after the accident, and who made the repairs thereon. He corroborated plaintiff's testimony as to the tie rod having fallen off and also testified similarly to mechanic Snell with reference to the procedure in replacing a tie rod and/or tie rod ends. He stated that this particular tie rod had no cotter pin on it.
Witness Turnage, in his deposition, testified that he was sitting as a passenger on the left-hand side of the bus, directly behind the driver, and that he saw plaintiff approaching from the opposite direction; that plaintiff was driving at about twenty-five to thirty-five miles per hour on his right-hand side, and that he saw clearly that he lost control of his car and came on over to the left and collided with the bus as testified by plaintiff.
The defendant and his mechanic, Clay Weber, testified positively that the tie rod introduced in evidence was not the tie rod which they had placed on plaintiff's car. Their reason for so testifying was the fact that the tie rod, including the tie rod end, was saturated with dirt and grease and showed no recent tampering therewith. They also introduced the testimony of mechanics May and Polito to the same effect. It may be noted that the tie rod had been kept wrapped in a piece of paper for about a year prior to the trial, and probably dirt accumulated on it during that time.
The defendant and his witnesses all testified to the effect that a car can be controlled even where only one tie rod is connected as long as it is rolling on a straight line. Apparently, by that line of testimony, they are trying to show that plaintiff was guilty of negligence in applying his brakes and in not continuing along the straight road at least until after passing the bus. Their theory is that the free wheel will follow the other wheel as long as the car is moving straight ahead.
Be that as it may, there is no doubt that the falling off of the tie rod created an emergency and that the plaintiff used his best judgment in applying his brakes gradually when he saw that he was losing control of the steering. That, certainly, cannot be considered negligence on his part.
This is purely a factual case. Although he gave no written reasons for his judgment, the trial judge must, of necessity, have come to the conclusion that the proximate cause of the accident was the improper repairing of the tie rod and/or the failure to properly install a cotter pin. In order to reach this conclusion, he had to believe plaintiff and his witnesses and disbelieve defendant and his employee, Weber (who testified in addition to the fact that the tie rod produced was not the one placed by them, that the one placed by them was inserted according to the regular procedure including the insertion of a. cotter pin). It must be noted that there is no evidence or indication that anything further was done to plaintiff's car after it was delivered to plaintiff on the afternoon prior to the accident, except for the driving thereof as intended. There is no evidence or indication of any intervening cause. We can find no reversible error committed by the trial judge. Like he, we are not impressed by the testimony of the defendant and of Weber, especially their denial that the tie rod introduced in evidence *Page 919 
was not the tie rod upon which Weber had worked; we cannot believe that the plaintiff and Stamps, the Columbia Motors mechanic, would have substituted an old tie rod in place of the one in question.
As to the liability for the accident, we are of the opinion that the judgment is correct and the amount awarded for the property damage sustained by plaintiff is not disputed.
As to the additional amount of $400 prayed for in the answer to the appeal, to cover the pain, suffering and shock sustained by plaintiff, it is our opinion that such alleged pain, shock and suffering has not been proved. The only testimony on that phase of the case is the mere statement of the plaintiff himself that he was shaken up and slightly bruised, and that it also aggravated a nervous condition for which he had been discharged from the army. He did not consult any physician, and, as a matter of fact, he was in Baton Rouge on the day after the accident, and apparently attended in a normal manner to the fixing of his automobile and did not have to absent himself from business. From the evidence, it appears to us that if he sustained any personal injury at all, it was inconsequential and obviously that was the opinion of the trial judge.
For the reasons set forth, the judgment appealed from is affirmed.