CULPEPPER, Judge.
The plaintiff seeks recovery for property damage to his farm tractor caused by a fire. The defendant, Reed Gas, Inc., had installed a propane gas tank on the tractor. Plaintiff contends that, due to Reed’s defective installation, gas escaped while the tractor was being operated, thus causing the fire. From an adverse judgment, defendant appeals.
The substantial issue is whether the fire was caused by Reed’s negligent installation of the propane tank and its accessories.
The facts show that in the fall of 1967 plaintiff purchased a used farm tractor from Oliver Tractor Sales in Crowley for the price of $4,000. He used the tractor to harvest his rice crop and then returned it to Oliver Tractor Sales for certain repairs and painting which had been agreed on at the time of the sale.
Before this work was done, an employee of General Gas Company, a propane gas supplier, contacted plaintiff and informed him that the propane tank, which was installed on the tractor at the time of the sale, was the property of General Gas but that if plaintiff would buy his gas from this dealer they would leave the tank on the tractor. Mr. Frey informed this gentleman that he purchased his gas from Reed for all of his tractors and that he didn’t want to change at this time. Furthermore, it was plaintiff’s understanding that he had purchased the tractor complete with the tank.
While the tractor was in Oliver’s shop for repairs, a representative of this concern contacted Reed and asked if they would change the tank on the tractor, since General Gas had asked for the return of theirs. Mr. Reed went to Oliver Tractor Sales and was shown a tank on an old abandoned tractor which he was asked to install on plaintiff’s tractor. Reed testified he examined the tank and found it was in good condition. He and an assistant then proceeded to install the tank on plaintiff’s tractor.
The tank was first bolted lengthwise on top of the hood of the tractor. On the left hand side, from the driver’s seat, there are two valves on the tank, one for liquid and one for vapor. Leading from each valve is a piece of copper tubing a few inches long. These two pieces of tubing come together in a brass T-joint, forming what some of the witnesses called a “bridle.” From the bottom of the T-joint a piece of rubber hose runs a distance of about two feet to the heat exchanger and vaporizer, from which the gas then runs on into the car-burator of the engine.
Mr. Reed testified he did not think he replaced the valves or the copper tubing or the T-joint because he found these in satisfactory condition. However, the rubber hose was. worn and he replaced it. This hose is attached to the bottom of the T-joint with a metal nipple. The other end of the hose is attached to the heat exchanger-vaporizer.
Reed and his helper both testified that after they completed the installation they tested for leaks by starting the engine, to raise the pressure, and then pouring water over the connections. A leak is detected by gas bubbling through the water. Finding no leaks, they left the tractor for completion of the painting by Oliver.
During the spring of 1968, Oliver Sales returned the tractor to plaintiff. The fire occurred several weeks later. Plaintiff testified he had used the tractor about 12 working days without trouble.
On the day of the fire the tractor was being used to pull a harrow. The *720 driver, a 17-year-old negro boy, testified he was looking back at his harrow and when he turned around flames were coming from the left side of the tank, shooting down, and the wind was blowing the flames back toward him. He stopped the motor and jumped off and ran.
Olin Sittig, who was driving another tractor about 100 feet away, testified he heard a loud hissing noise like that caused when you “bleed” a butane tank. He turned and saw flames shooting down from the vicinity of the bridle.
Johnny Sittig, Jr., who was loading a seed planter nearby, testified he ran to the tractor and tried to extinguish the fire by throwing dirt on it with a shovel. He said the flames were coming from the left side shooting down from the point where the brass T connected with the rubber hose. The hose was gone and the flames were coming from the nipple which had held the hose to the T-joint.
We conclude the testimony of these witnesses shows that while the tractor was being operated gas began to escape from some part of the bridle or the hose. The gas became ignited and the hose burned, allowing the gas under pressure to escape freely through the T-joint.
Plaintiff testified that neither he nor any of his employees had tampered with the propane gas system since its installation by Reed. Mr. Reed himself stated that he services, free of charge except for new parts, the propane systems on all tractors of customers to whom he sells gas. The reason for this is that the maintenance of these systems is highly specialized work for which a license is required. This corroborates Mr. Frey’s testimony that neither he nor his employees ever attempted to repair the gas systems. Plaintiff says he always called Mr. Reed to do his work. Furthermore, the tractor drivers who had operated the tractor said they had not tampered with the system. We conclude the evidence shows there had been no tampering with the system since its installation by Reed and that the tractor had been itsed in the usual and normal manner.
Under the circumstances, the evidence is sufficient to show that the gas escaped because of defective installation by Reed. This is the most probable cause of the fire. No other cause is suggested by the evidence.
In this court counsel have argued the applicability of the doctrine of res ipsa loqui-tur. We find it unnecessary to decide whether this doctrine is applicable. We prefer to rest our finding on the basis that a preponderance of the evidence shows the fire was caused by the defective installation by the defendant Reed.
This case falls within the jurisprudence that a person is liable for damages caused by his negligence in repairing or installing equipment. For instance, in the recent case of Foy v. Ed Taussig, Inc., 220 So. 229 (3rd Cir. 1969), writ of certiorari refused, we held a repairman liable where his defective repair of an automobile accelerator caused an accident. See also Swil-lie v. General Motors Acceptance Corporation, 133 So.2d 813 (3rd Cir. 1961); Drummond v. American Insurance Company, 159 So.2d 61 (1st Cir. 1963) and Miller v. Margot, 42 So.2d 916 (1st Cir. 1949).
The next issue is the quantum of the award. Several appraisals were made, but the trial judge accepted that of Mr. Joseph Simon, Jr., in the sum of $2,015.22. The judge also allowed the sum of $150 for the cost of a new tank, making a total of $2,165.22. We find no manifest error in this award.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
Miller, J., votes for rehearing.