220 So.2d 229 (1969)
Mrs. Violet Rose FOY, Individually and as Tutrix of her Minor Children, Tommy Ray Foy, Scotty Joe Foy and LeRoy Foy, Plaintiffs-Appellants,
v.
ED TAUSSIG, INC., and Travelers Insurance Company, Defendants-Appellants, and
Eddie L. Ellzey and Rufus Lapointe, Defendants-Appellees.
No. 2553.
Court of Appeal of Louisiana, Third Circuit.
February 20, 1969.
Rehearings Denied April 2, 1969.
Writs Refused June 9, 1969.
*232 Edmund E. Woodley, A. William Mysing, Jr., Holt & Woodley, Lake Charles, for defendants-appellants-appellees.
Baggett, Hawsey and McClain, by William B. Baggett, Lake Charles, for plaintiff-appellee-appellant.
L. E. Hennigan, Jr., Lake Charles, for defendants-appellees.
Jerry D. Kirk, Lake Charles, for defendants-appellees.
Before FRUGÉ, SAVOY and HOOD, JJ.
HOOD, Judge.
This is an action for damages instituted by Mrs. Violet Rose Foy, individually and in behalf of her three minor children, against Ed Taussig, Inc., The Travelers Insurance Company (Taussig's insurer), Eddie L. Ellzey and Rufus LaPointe. Plaintiff claims damages for personal injuries sustained by her and by her three minor children, and for the alleged wrongful death of her husband, Fred Foy, all arising out of an automobile accident which occurred on December 3, 1966.
The case was tried by jury, with the result that a verdict was rendered in favor of plaintiff, individually and for the children, and against Taussig and Travelers. By the same verdict plaintiff's demands against the remaining defendants, Ellzey and LaPointe, were rejected. Judgment was rendered by the trial court in accordance with that verdict.
After the judgment had been rendered, defendants Taussig and Travelers timely filed a motion for a new trial, which motion was denied by the trial court. In his reasons for denying that motion, the trial judge stated that "the court does not agree with the decision, but under our procedure the Court is powerless to order an additur or a remittitur." He reasoned that the granting of a new trial would make it necessary to relitigate the entire case, and eventually it would be appealed anyway on substantially the same evidence. Although he disagreed with the verdict, he felt that it was "to the best interest of all parties concerned to deny the motion for a new trial and let the Court of Appeal pass on the decision."
After the motion for a new trial was denied, appeals were taken by defendants, Taussig and Travelers, and by plaintiff, individually and in behalf of her minor children.
A number of factual and legal issues are presented on this appeal. One important factual issue to be determined is whether the accelerator of the car, in which the decedent and his family were riding at the time the accident occurred, stuck immediately before that accident, and, if so, whether the sticking of the accelerator was a proximate cause of the accident.
The accident occurred about 6:00 p. m., on December 3, 1966, near the intersection of Magnolia Street and Sulphur Avenue, in the Town of Westlake. Immediately prior to that time, the decedent, his wife and their three children were riding in a 1959 Pontiac automobile, traveling north on Magnolia Street toward the point where that street runs into or joins Sulphur Avenue. These two streets form a "T" intersection there, with Sulphur Avenue running east and west and forming the top of the "T". Mr. Foy, the decedent, was driving and his wife was sitting in the front seat with him. Upon reaching the intersection, Mr. Foy stopped the car and allowed a vehicle on Sulphur Avenue to traverse the crossing. He then depressed the accelerator of the car with his foot, causing the car to move forward up a slight incline and into the intersection, his purpose being to turn to his left and to proceed west on Sulphur Avenue. About that time the car suddenly began to gain speed, and Foy lost control of it. It ran off the north side of Sulphur Avenue, traveled in a northwesterly direction across a small ditch and culvert and into the front lawn of the Westlake High School, and it then ran into a tree located on the school grounds. The *233 tree was located 150 feet northwest of the center of the intersection. As a result of that accident Mr. Foy was killed almost instantly, and Mrs. Foy and the three children were injured.
The automobile involved in this accident had been purchased by the Foys about 9:00 or 10:00 o'clock that morning, at a used car lot in Westlake. The used car lot was being managed by defendant Ellzey at that time, and a sign on the lot indicated that it was owned and operated by defendant Taussig. Mr. and Mrs. Foy, with their children, drove to the used car lot that morning in another automobile owned by them, and after negotiating with Ellzey, they bought this 1959 Pontiac for $350.00. They paid cash for the car and it was purchased in Mrs. Foy's name. Immediately after the sale was completed, Robert L. LeBouef, who worked at the car lot, drove the Pontiac to the Foy residence in Westlake, while Mr. and Mrs. Foy followed him in their other automobile. After arriving at the Foy residence, the entire Foy family got in the Pontiac, with Mr. Foy driving, and they took LeBouef back to the used car lot. As the decedent was driving into the car lot, the accelerator of the car stuck, causing the car to lurch forward. Mr. Foy applied the brakes, however, and LeBouef turned off the ignition key, and the car was brought to a stop before any damages were caused.
Foy and Ellzey discussed the fact that the accelerator had stuck, and Ellzey agreed to have it repaired. Ellzey told Foy to drive the car to his home, and he promised to send a mechanic out that afternoon to fix the accelerator. Mr. Foy then drove the car back to his home, and he experienced no difficulty with the accelerator on that trip. Defendant LaPointe, a mechanic who was regularly employed by Taussig, went to the Foy residence between 1:00 and 3:00 o'clock that afternoon, pursuant to Ellzey's instructions, and he worked on the accelerator for about 20 minutes. He then told Mrs. Foy that the necessary repairs had been made and that it was all right for them to drive the car.
LaPointe testified that upon inspecting the car on that occasion he found that a "linkage," which connected the accelerator to the carburetor, had been bent, and that this was causing the accelerator to stick. He stated that he removed the linkage, straightened it out, replaced it and then tested the accelerator and determined that it would function properly, without sticking. He felt that the repairs which he made corrected the difficulty, and that the accelerator would not stick after he completed those repairs.
As we have already noted, this car was involved in an accident about 6:00 o'clock that same afternoon. Plaintiff contends that the accelerator of the car stuck as her husband was endeavoring to enter the intersection of Magnolia Street and Sulphur Avenue, and that the sticking of the accelerator was the sole proximate cause of the accident. She alleges that the car had been purchased from defendant Taussig, that it had a defective accelerator, and that all of the defendants are liable because of the breach of an express and implied warranty. She alleges that defendants Ellzey and LaPointe are liable on the additional ground that those defendants were negligent in selling, repairing and representing to her that the purchased automobile was safe and reasonably fit for the purposes for which it was sold, when it was known that the automobile was defective and unsafe for use.
The jury obviously concluded that the accelerator of the car stuck, and that the sticking of the accelerator was a proximate cause of the accident, because that is the only basis upon which Taussig and its insurer could have been held to be liable. Although the trial judge stated that he disagreed with the verdict, he did not specify the findings which he considered to be erroneous.
Mrs. Foy testified that immediately before the collision occurred she saw the accelerator on the floorboard after her husband had removed his foot from it. She stated that she reached down and was endeavoring *234 to pull the accelerator up with her hand when the car struck the tree. This testimony, together with the fact that the accelerator had stuck earlier that same day, indicates that the accelerator actually was defective and had stuck. Four mechanics testified, however, that as a safety factor an extra strong spring had been attached to the linkage between the accelerator and the carburetor, which spring should have prevented the accelerator from sticking. The evidence also shows that the carburetor was in a closed position after the accident had occurred, but the mechanics concede that the force of the impact could have caused the carburetor to close, even though it had been open at the time of the collision.
We have reviewed the evidence, and we conclude, as did the jury, that the accelerator actually did stick, and that the malfunction of that part of the car constituted a proximate cause of the accident.
The next factual issue presented is whether Mr. Foy was intoxicated at the time the accident occurred, and if so whether his intoxication was a proximate and contributing cause of the accident.
Mrs. Foy testified that her husband had been drinking heavily and that he was under the influence of intoxicating liquor when they went to the used car lot and purchased the Pontiac automobile that morning. She stated, however, that he slept from about 12:30 to 5:20 p. m. that day, that he had nothing more to drink after he went to sleep, and that he was not intoxicated at the time the accident occurred. Her 14 year old son, Tommy Foy, testified substantially to the same effect, except that he conceded that his father had had a bottle of whiskey in the car with him that morning and also that afternoon at the time the accident occurred.
Two service station attendants testified that they put gas in the car for Mr. Foy about ten or fifteen minutes before the accident occurred, and that in their opinions the decedent was highly intoxicated at that time. One of them stated "You could tell he was drinking real heavy by the way he talked," by the fact that he kept trying to start the motor of the car while it was running, and by the smell. The other attendant testified that he obviously was intoxicated, that "he kind of mumbled like," that "he kept kind of nodding his head a little bit like he was about to go to sleep or something," and that he insisted on putting some gas in the car although the tank was full.
Immediately after the accident occurred a pint bottle of whiskey, about half full, was found in the front seat of the wrecked car. Also a sample of the decedent's blood was taken shortly after his death, and tests made of that blood by a pathologist revealed that the alcoholic content of the decedent's blood was 285 milligrams per cent, or .285 grams. According to the pathologist, this finding constitutes definite evidence of intoxication. He testified, "A person with 285 milligrams of alcohol in the blood stream, and bathing his brain and nerve cells, would certainly have difficulty in seeing, hearing, reasoning, comprehension of problems, coordination of muscles and the performance of even simple tasks without great difficulty."
Plaintiff contends that the trial court erred in permitting evidence as to this blood test to be presented to the jury, and that the evidence as to such a test should not be considered by us on this appeal. The principle grounds for that argument are that defendants failed to show that the embalmer actually took a sample of the decedent's blood. Alternatively, she contends that the sample was not properly taken and preserved for the pathologist and that the evidence failed to show that the sample tested was the one which had been taken from the decedent. We are convinced that the blood sample tested by the pathologist was actually a sample of the decedent's blood, that the tests made on that sample revealed the alcoholic content of the decedent's blood, and that the results of the test were properly admitted as evidence. *235 We also feel that, even without considering the results of this blood test, the evidence shows that the decedent was highly intoxicated at the time the accident occurred.
Photographs of the scene of the accident show that the school grounds were spacious and that there were very few trees on those grounds. If the decedent had not been intoxicated, we think he could and would have avoided a collision with one of the very few trees which were there, even though the accelerator did stick. Also, it is reasonable to conclude that where it not for his intoxicated condition, the decedent would have exercised the same degree of care as he had exercised earlier that day when the accelerator first became stuck on the used car lot.
Our conclusion is that the decedent was intoxicated at the time the accident occurred, that he was negligent in attempting to drive the car while he was in that condition, and that his negligence in that respect was a proximate and contributing cause of the accident.
Since the negligence of the decedent was a proximate and contributing cause of the accident, then regardless of the conclusions which may be reached as to the negligence of any of the defendants, plaintiff and her children are barred by the decedent's contributory negligence from recovering damages for his death. Malveaux v. Buller, 135 So.2d 368 (La.App. 3d Cir. 1961); Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A.L.R. 148 (1928); Smith v. Illinois Cent. R. Co., 10 La.App. 342, 120 So. 405 (1929); Smith v. Monroe Grocer Co., 179 So. 495 (La.App.2d Cir. 1938); McGuire v. Louisiana Baptist Encampment, 199 So. 192 (La.App. 1st Cir. 1941). The portion of the judgment which awards damages for the death of the decedent, therefore, must be reversed.
Defendants also contend that Mrs. Foy is barred from recovering damages for her own personal injuries, as well as for the death of her husband, because of contributory negligence or assumption of the risk. It is argued that she knew that Mr. Foy had been drinking throughout the day, and that she assumed the risk of riding in the car which he was driving while he was in an intoxicated condition. The evidence establishes that Mrs. Foy was aware, or she should have been aware, of her husband's intoxicated condition when she voluntarily rode in the car with him at the time the accident occurred.
When an accident occurs involving a driver whose mental or physical faculties have been materially impaired due to the influence of intoxicants, a guest passenger who knows or should know of the driver's condition and nevertheless voluntarily rides with him cannot recover for injuries received in an accident caused in whole or in part by the driver's negligence, if the alcohol induced impairment of the driver's ability is a substantial contributory cause of the driver's negligence. Viator v. Grain Dealers Mutual Insurance Company, 182 So.2d 165 (La.App. 3d Cir. 1966); Roller v. Cormier, 192 So.2d 568 (La.App. 3d Cir. 1966); Wright v. State Farm Mutual Automobile Ins. Co., 194 So. 2d 799 (La.App. 2d Cir. 1967); Elba v. Thomas, 59 So.2d 732 (La.App.Orl.Cir. 1952).
Since Mrs. Foy was, or should have been, aware of the fact that the decedent was under the influence of intoxicants when she voluntarily rode in the car with him, and since Mr. Foy's intoxicated condition was a substantial contributing cause of the accident, we must conclude that Mrs. Foy assumed the risk and thus she is barred from recovering damages for the personal injuries which she sustained. The judgment appealed from must be reversed, therefore, insofar as it awards damages to Mrs. Foy, individually.
The minor children who were in the car, of course, are not chargeable with contributory negligence or assumption of the risk, and plaintiff thus is not barred on *236 those grounds from recovering damages in behalf of such children.
The next factual issue which must be determined is whether the Pontiac automobile was sold to the Foys by Taussig, through its agents or employees. Plaintiff, and defendants Ellzey and LaPointe, contend that the car was sold by Taussig, and that the latter and its insurer are liable in damages because of a breach of warranty. Taussig contends that it did not sell the car to the Foys, that the vehicle was owned by Ellzey at the time of that sale, and that the sale thus was from Ellzey to the Foys. Alternatively, they contend that Ellzey acquired title to the car after he had sold it to the Foys, and that the doctrine of after acquired title thus is applicable.
James B. Gardiner, who was the used car manager for Taussig at that time, testified that at about 9:00 a.m. on December 3, 1966, he agreed with Ellzey that the latter would purchase the Pontiac automobile from Taussig for $200.00, and that later that day he received payment from Ellzey. Taussig and its insurer contend that the sale was complete when the agreement was entered into on the morning of December 3, before the car was sold to the Foys.
Ellzey testified that prior to the time he sold the car to the Foys, he offered Gardiner $150.00 for it, but that this offer was refused and that Gardiner made a counter offer to sell it to him for $200.00. He stated that he did not accept that counter offer until some time during the afternoon of December 3, after the Foy sale had been completed. He also stated that he informed the Foys at the time he sold them the car that it belonged to Taussig, that if he bought the car from Taussig he would invoice it to them, but that if he did not do so the car would be invoiced to them by Taussig. He testified that at the time he accepted Gardiner's counter offer, he informed Gardiner that he had already sold the car, and his interpretation of the entire transaction was simply that "there was $350.00 I got for the car and they got two hundred and I got a hundred and fifty."
When the car was sold to the Foys, a document designated as a "Retail Buyer's Order" was signed by Ellzey and by Mrs. Foy. This document gives the description of the car and the terms of the sale, and the evidence shows that it customarily had been used by Taussig as a bill of sale. The form used indicates on its face that Taussig was the seller and that Mrs. Foy was the buyer. Ellzey signed it as a "Salesman" of the seller. He noted on the form that the price had been paid in cash. The evidence also indicates that LaPointe was an employee of Taussig at the time he went out to repair the accelerator, and that fact further tends to support plaintiff's contention that the car was sold by Taussig.
The jury apparently concluded that the car was sold by Taussig, rather than by Ellzey, because such a finding was essential to the verdict which was rendered. We cannot say that the jury erred in that finding. We conclude that Taussig was the seller, and that the transaction which was entered into between Gardiner and Ellzey after the Foy sale merely constituted an agreement as to the commission which Ellzey was to receive for the sale of the car or as to the manner in which the proceeds of the sale were to be divided.
Taussig and its insurer contend, alternatively, that even though the car may have been owned by Taussig at the time of the Foy sale, Ellzey was not an employee or agent of Taussig at that time, and that he was not acting in the furtherance of Taussig's affairs. This contention is based on Taussig's claim that the used car lot had been sold to Ellzey before December 3, 1966, that Ellzey's employment by Taussig had been terminated prior to that date, and that Ellzey thus did not represent Taussig in any capacity when the car sale was made to Mrs. Foy.
The evidence shows that Ellzey purchased the used car lot business from Taussig about that time. Taussig's version of the transaction was that the deal was completed and became effective on December *237 1, 1966, when the parties orally agreed that the transfer was to be made. Taussig concedes that a formal written agreement to that effect was not executed by the parties until about noon, on December 3, 1966, which was after the Foy sale had been completed, but it contends that there had been a meeting of the minds before that time, and that the written contract was signed later merely to evidence their prior oral agreement. Ellzey's version of the transaction was that there was not a meeting of the minds, and thus that the sale of the car lot was not completed, until the early afternoon of December 3 when the papers were actually executed. Ellzeys' testimony is supported by that of his attorney who was present when the written act of transfer was formally executed.
As we have already noted, a Taussig sign was still up in the car lot when the Foys purchased the car, and in connection with that sale a Taussig bill of sale was used, with Ellzey signing as a salesman for Taussig. The evidence also shows that Ellzey was still driving a Taussig demonstrator on the morning of December 3, and that the parties did not agree on some matters relating to the sale, such as the payment of taxes and removal of the signs, until about noon, on December 3, immediately prior to signing the act which completed the transfer of the used car lot.
The evidence convinces us that the sale of the used car lot was not completed until after the Pontiac automobile had been sold to the Foys. At the time of the sale Ellzey was acting as the agent of Taussig, and the agreement which he entered into with the Foys was binding on Taussig.
Plaintiff contends that under the provisions of LSA-C.C. arts. 2475 and 2476 Taussig, as the seller of the Pontiac automobile, is bound to have warranted the thing sold as being free from defects. She takes the position that there has been a breach of that warranty, in that the accelerator of the car stuck, and that she, as natural tutrix of her children, is entitled to recover from the seller the damages which they sustained as a result of that defect or vice. She relies primarily on the provisions of articles 2545 and 2547 of the Louisiana Civil Code, and on the case of Meche v. Farmers Drier & Storage Company, 193 So.2d 807 (La.App. 3d Cir. 1967).
The cited articles of the Civil Code provide that:
"Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."
"Art. 2547. A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.

"It may, according to circumstances, give rise to the redhibition, or to a reduction of the price, and to damages in favor of the buyer."
In Meche v. Farmers Drier & Storage Company, supra, we stated that:
"A manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated. Smith v. New Orleans & Northeastern Railroad Co., La.App. 1 Cir., 153 So.2d 533; Samaha v. Southern Rambler Sales, Inc., La.App. 4 Cir., 146 So.2d 29; Restatement of Torts 2d, Section 402(A); Prosser, The Law of Torts, Chapter 19 (3d ed., 1964); 65 C.J.S. Negligence § 100(2). Cf. also: Percy, Products Liability Tort or Contract or What?, 40 Tul.L.Rev. 715 (1966); Note, Torts Strict Liability of the Manufacturer, 23 La.L.Rev. 810 (1963)."
*238 Defendant Taussig, in resisting plaintiff's demands, specially pleads and contends that no warranty of any kind was made by Taussig, or by any of its employees, relative to the automobile sold to the Foys. In that connection, Taussig points out that not only was there no specific warranty of the automobile which was sold, but that the purchaser, Mrs. Foy, specifically waived any warranty which may be implied by law.
The "Retail Buyer's Order," or the bill of sale, which was executed by Ellzey and Mrs. Foy at the time the car was sold contains the following provision:
"In the event this order is for a used car it is specifically understood between the buyer and seller that this sale is made without any warranty whatsoever, expressed or implied, except as to title, and the buyer herein specifically waives the implied warranty provided for by Louisiana law, including all warranties against vices or defects or fitness for any particular purpose. This express waiver shall be considered a material and integral part of any sale which may hereafter be entered into between the parties covering the automobile herein described."
LSA-C.C. art. 2476 provides that "The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices." This implied warranty, however, may be waived by the purchaser. Article 1764 of the Civil Code provides that "All things that are not forbidden by law may legally become the subject of, or the motive for contracts," and that:
"Things which, although not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; of this nature is warranty, which is implied in every sale, but which may be modified or renounced, without changing the character of the contract or destroying its effect."
The above quoted provisions of the Retail Buyer's Order constitutes an effective waiver of the warranty implied by law, unless the parties for some other reason are not bound by that waiver.
Plaintiff contends that the waiver is not binding on the purchaser, Mrs. Foy, or on her children, because of fraud on the part of the seller. The fraud, she argues, consisted of Taussig's failure to disclose to her or to her husband the fact that the accelerator had been sticking. In support of her arguments to that effect, she refers us to LSA-C.C. art. 2548 and to the case of Roby Motors Co. v. Price, 173 So. 793 (La.App. 2d Cir. 1937).
Article 2548 of the Civil Code provides that "The renunciation of warranty, made by the buyer, is not obligatory, where there has been fraud on the part of the seller."
In the Roby Motors Company case, supra the seller of a used car sued the purchaser for the balance alleged to be due on the purchase price. The purchaser resisted on the ground that the car was afflicted with redhibitory vices, and she reconvened for the amounts which she has paid on the purchase price. The purchaser in that case had signed a waiver of warranty, as did plaintiff in the instant suit. The court found, however, that the car had "serious mechanical defects and vices," that the seller had "grossly misrepresented" its mechanical condition, and that this gross misrepresentation constituted sufficient fraud to nullify the waiver of warranty relied on by the plaintiff.
The cited case is not applicable here, because there the reconventional demand filed by the defendant in effect was a redhibitory suit, whereas the instant case is a tort action. Also, the plaintiff in reconvention *239 was the purchaser of the car, whereas the claims we are considering here are for and in behalf of plaintiff's children, none of whom had had any contractual relationship with the defendants. We, nevertheless, have considered the rule applied in that case relating to the waiver of warranty.
In the instant suit the evidence does not show that the seller, or any of its agents, made any representation to the Foys relating to the mechanical condition of the car before the sale of that car was completed. It is true that the accelerator of the car had stuck about one month before it was sold to plaintiff, that Taussig's agents were aware of that fact, and that this information was not given to Mr. or Mrs. Foy. But, the record does not show that any facts were misrepresented to the Foys prior to the sale. The defendants did not represent to them that the car was in good mechanical condition, or that the accelerator would not stick. No false representations as to the mechanical condition of the car, therefore, were made to the Foys, and thus there was no fraud on the part of the seller. The waiver of warranty which was executed by Mrs. Foy is valid, therefore, and it has not been nullified by fraud on the part of the seller.
Since the warranty implied by law had been waived, there is no necessity for us to determine whether plaintiff may recover in behalf of her children on the grounds that there has been a breach of warranty.
Although Taussig did not warrant the car to be free from defects or vices when it was sold, it did undertake to repair the sticking accelerator a few hours later, and the Taussig employee who made the repairs informed Mrs. Foy that "it was fixed and it was ready to go, it was all right." We interpret these statements by the mechanic as an assurance to Mrs. Foy that the accelerator would not stick anymore and that it would be safe to use the car. The mechanic obviously was mistaken, because the accelerator did stick within a few hours after he had worked on it. Plaintiff and her husband, relying on that representation made by Taussig's employee, undertook to use the car, and the failure of the accelerator to function properly has been found to be a proximate cause of the accident.
The question is presented as to whether Taussig and its employees, Ellzey and La-Pointe, were negligent in failing to properly repair the sticking accelerator, and in incorrectly informing the owner of the car that the necessary repairs had been made and that it was safe to drive the vehicle. If they are found to have been negligent in those particulars, then the further question is presented of whether that negligence was a proximate cause of the accident.
The general rule is that recovery may be had against a repairman for personal injuries sustained after the making of repairs to a motor vehicle, if the evidence establishes that the repairman was negligent in making the repairs, that there was a causal relationship between the negligent repair work and the subsequent accident, and that the negligence of the repairman was a proximate cause of the accident. See Drummond v. American Ins. Co., 159 So.2d 61 (La.App. 1st Cir. 1963); Miller v. Margot, 42 So.2d 916 (La.App. 1st Cir. 1949); Swillie v. General Motors Corporation, 133 So.2d 813 (La.App. 3d Cir. 1961); Smith v. Roberts, 268 S.W.2d 635 (Ky.1953); Oliver v. Bereano, 267 App.Div. 747, 48 N.Y.S.2d 142 (1944); Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.2d 197 (1933); Glassman v. Goldman, 35 Misc.2d 429, 230 N.Y.S.2d 947 (N.Y.1962); Spolter v. Four-Wheel Brake Service Co., 99 Cal.App.2d 690, 222 P.2d 307 (1950); Johnson v. Land O'Lakes Motor Co., 218 Minn. 404, 16 N.W.2d 466 (1944); Kalinowski v. Truck Equipment Co., 237 App.Div. 472, 261 N.Y.S. 657 (N.Y.1933); 61 C.J.S. Motor Vehicles § 739, p. 886; 38 Am.Jur.2d, Garages etc., Section 128, pp. 422-423; 92 A.L.R.2d, GaragemanDefective WorkLiability, 1408 et seq., and cases cited therein.
*240 We think that general rule of law is applicable here. In the instant suit it is obvious that the repairman LaPointe, did not properly repair the sticking accelerator. It continued to stick after he worked on the car and after he had advised the owner that the defect had been corrected.
LaPointe testified that he did very little work on the carso little, in fact, that he did not bother to turn in a statement to his employer for the time he had spent. He did not start the motor of the car or drive it after the repair work was done in order to determine whether the accelerator functioned properly. The only test which he performed to determine whether his repair work was adequate was to depress the accelerator while the car was parked and the motor not running. We think he was negligent in failing to make a more complete or thorough test of the car before he advised Mrs. Foy that it was safe to drive it. His negligence in that respect, we believe, was a proximate cause of the accident.
Taussig, as the employer of LaPointe, is responsible for this negligence of the latter in repairing the accelerator. We find, however, that Ellzey was not negligent. He was neither the repairman nor the employer, and the evidence does not show any negligence on his part.
Our conclusion is that defendant Taussig and its employee, LaPointe, were negligent in failing to properly repair the accelerator of the Foy automobile, and in advising plaintiff, in effect, that the accelerator thereafter would not stick and that it would be safe for them to use the car. Their negligence in that respect was a proximate cause of the accident. We think plaintiff is entitled to recover, for and in behalf of her minor children, from Taussig and its insurer, Travelers, and from LaPointe.
One of plaintiff's children, Scotty Joe Foy, seven years of age, sustained injuries consisting of multiple lacerations of the upper lip and lower lip, fractures of the maxilla, and the loss of three permanent teeth. He received prompt and adequate medical treatment. The fractures were repositioned and realigned, the remaining teeth were brought back into position and the teeth and jaw were fixed with wires. He was hospitalized for seven days immediately after the accident occurred, and about one month later he was hospitalized again for about 36 hours, at which time the wires were removed. The evidence shows that he made an excellent recovery, that he has no residual disability, but that he has sustained the permanent loss of three teeth and some relatively minor permanent scars on his face. We think an award of $7500.00 for the injuries sustained by Scotty Joe Foy would be fair and adequate.
LeRoy Foy, 10 years of age, sustained lacerations of the left upper lip, chin, left anterior chest and left upper arm. There was a contusion or bruise of the right knee and a large abrasion of the forehead. The treatment which he received consisted largely of cleaning and debriding the wounds, and the giving of a tetanus booster shot. He was hospitalized for three days, and he remained under the care of a doctor for a period of approximately two weeks. He is left with some relatively minor permanent scars of the lip and chin. We think an award of $1000.00 should be made for the injuries sustained by this child.
Tommy Ray Foy, 14 years of age, sustained abrasions and contusions of the left side of his face, a large contused type of laceration over the tibial region of the left leg, and some intra-abdominal injuries, with internal bleeding. Exploratory surgery was performed to determine the nature of the internal injuries, and it revealed that the boy had a three inch laceration of the right lobe of the liver. The lacerations of the liver and of the leg *241 were sutured. Tommy was hospitalized for seven days, and was confined to his home until December 29. He was allowed to return to school on the last mentioned date, but the doctor advised that he not participate in strenuous activities at that time. He was discharged as being fully recovered on January 21, 1967. He is left, however, with a permanent scar on his abdomen as a result of the surgery which was performed, and another scar on his leg. We think an award of $3000.00 for his injuries would be proper.
For the reasons herein set out, that portion of the judgment appealed from which condemns defendants, Taussig and Travelers, to pay damages unto plaintiff, Mrs. Violet Rose Foy, individually, is reversed, and judgment is hereby rendered in favor of said defendants, rejecting the demands of the said Mrs. Violet Rose Foy, individually. The remaining portions of the judgment appealed from are amended to decree that defendants Taussig, Travelers and Rufus LaPointe, are condemned, jointly, individually and in solido, to pay to plaintiff, Mrs. Violet Rose Foy, as Natural Tutrix of the minor Scotty Joe Foy, the sum of $7500.00; and as Natural Tutrix of the minor LeRoy Foy, the sum of $1000.00; and as Natural Tutrix of the minor Tommy Ray Foy, the sum of $3000.00; all with interest at the rate of 5 percent per annum from May 2, 1967, until paid, and all costs of these proceedings. Except as herein specifically reversed or amended, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants, Taussig, Travelers, and LaPointe.
Reversed in part, and amended and affirmed in part.
SAVOY, J., dissents being of the opinion that the Jury Verdict and Judgment of the district court are erroneous and that the judgment should be reversed.
On Application for Rehearing.
En Banc. Rehearings denied.