247 So.2d 635 (1971)
Angie R. LEWIS et al., Plaintiffs-Appellants,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellants.
No. 3370.
Court of Appeal of Louisiana, Third Circuit.
April 22, 1971.
Rehearings Denied May 26, 1971.
Writs Refused June 24, 28, 1971.
*636 Lunn, Irion, Switzer, Johnson & Salley, by Harry A. Johnson, Jr., Bodenheimer, Jones, Klotz & Simmons by G. M. Bodenheimer, Jr., Shreveport, Thomas A. Self, John S. Pickett, Jr., Many, for defendants-appellants.
Mansour & Lauve by Lewis O. Lauve, Alexandria, for plaintiff-appellee.
Blanchard, Walker, O'Quin & Roberts by Wilton H. Williams, Jr., Shreveport, for plaintiff-appellant.
Stagg, Cady & Beard by Roy L. Beard, Shreveport, for defendant-third party plaintiff-appellant.
Caldwell Roberts, of Mayer & Smith, Shreveport, for defendant-appellee-intervenor.
Before HOOD, MILLER and DOMENGEAUX, JJ.
HOOD, Judge.
This is a wrongful death action arising out of a motor vehicle collision in which Kenneth R. Lewis, Sr., was fatally injured. *637 The suit was instituted by Mrs. Angie R. Lewis, widow of the decedent, individually and as natural tutrix of her two minor children. The defendants are: Dr. and Mrs. Leonard O. Tackett, and their alleged insurer, Travelers Insurance Company; Ford Motor Company; Wray Lincoln-Mercury, Inc.; and Many Motors Company, Inc., and its insurer, Universal Underwriters Insurance Company.
An intervention was filed by Continental Casualty Company, claiming reimbursement for payments made under the Louisiana Workmen's Compensation Act. And, third party petitions were filed by Dr. and Mrs. Tackett, Wray Lincoln-Mercury, Many Motors and Universal Underwriters.
The case was tried by jury, and it resulted in a verdict consisting of several special findings. Pursuant to that verdict, judgment was rendered by the trial court as follows: (1) In favor of plaintiff, Mrs. Angie R. Lewis, individually and in behalf of her minor children, against Dr. and Mrs. Tackett, for the aggregate sum of $125,000.00; (2) in favor of third party plaintiffs, Dr. and Mrs. Tackett, and against Ford Motor Company, Wray Lincoln-Mercury and Many Motors Company, for $115,000.00; (3) in favor of third party plaintiffs, Wray Lincoln-Mercury, Many Motors Company and Universal Underwriters, and against Ford Motor Company, for $25,000.00; and (4) decreeing that intervenor, Continental Casualty Company, be paid $6,265.00 out of any sums awarded to plaintiff, representing reimbursement of compensation benefits paid by that company. Appeals from that judgment were taken by plaintiff, and by defendants, Dr. and Mrs. Tackett, Ford Motor Company, Wray Lincoln-Mercury and Many Motors Company.
It apparently was determined at the trial that the wrong company in the Travelers Group had been named as a defendant, so judgment was not rendered against that company. No issue is raised here as to the release of that insurer from liability.
A number of issues are presented. We direct our attention first, however, to the question of whether the brakes on the Lincoln automobile being driven by defendant, Mrs. Tackett, were defective, and if so, whether the defective condition of those brakes was a proximate cause of the accident.
The accident occurred about 9:15 A. M. on March 20, 1967, on U.S. Highway 171, near Converse, Louisiana. The highway at that point is a wide, two lane, blacktopped road, running generally north and south. There is a wide, gentle curve in the road at the place where the collision occurred, but the highway is level and a motorist can see another vehicle a substantial distance ahead of him on the highway while negotiating this curve. It was raining and the road surface was wet when the accident happened, but visibility was fair. The legal speed limit on the highway was 60 miles per hour.
Immediately before the collision occurred, Mrs. Tackett was driving her 1965 Lincoln automobile north on Highway 171 at a speed of approximately 55 to 60 miles per hour. When she turned slightly to her left to begin negotiating the above described curve, her automobile began to "fishtail" or to slide on the pavement. She lost control of her car, and it proceeded to cross the southbound or west lane of traffic and to travel in a northwesterly direction across the shoulder of the highway into the ditch on the west side of the road. While traversing that ditch, the front part of her car struck the left side of a Chevrolet stationwagon which was being driven by Kenneth R. Lewis, Sr.
Mr. Lewis was driving south on the highway immediately before the collision occurred. When Mrs. Tackett lost control of her car, he turned his Chevrolet stationwagon to his right, onto the west shoulder of the highway, and he continued into the west ditch in an unsuccessful attempt to avoid a collision. The collision occurred in the ditch, at a point about five feet west of *638 the edge of the west shoulder of the highway. Mr. Lewis was killed almost instantly as a result of that accident.
The Lincoln automobile which was being driven by Mr. Tackett had been purchased by her husband from Wray Lincoln-Mercury, Inc., of Shreveport, on August 10, 1965. It thus was almost 20 months old when the accident occurred, and it had been driven 31,568 miles. The automobile had been manufactured by Ford Motor Company, and had been sold under a 24 month or 24,000 mile warranty, whichever came first. The warranty, of course, had expired by the time the accident occurred, since the car had been driven more than 24,000 miles.
Shortly after the automobile had been purchased, Dr. Tackett complained about the "rear wheels skidding upon application of the brakes." And, at his request the car was examined and worked on several times by representatives or employees of Ford Motor Company, of Wray Lincoln-Mercury, Inc., and of Many Motors Company, Inc. The last time any work was performed on the brakes, however, was on May 11, 1966, and at that time the Lincoln automobile had been driven 13,067 miles. This accident occurred ten months after the last work was performed on the brakes, and it was driven 18,501 miles in that ten month period. The record indicates that no complaints were made by Dr. or Mrs. Tackett as to the condition of the brakes, and no effort was made by them to have the brakes repaired by anyone, during that ten month period. The evidence shows that the car was taken to Many Motors on June 2, 1966, and to Wray Lincoln-Mercury on July 20, 1966, for unrelated repairs, but that the Tacketts made no complaints as to the brakes on either of those occasions.
The voluminous record shows that the 1965 Lincoln automobile was equipped with a dual hydraulic brake system, consisting of disc type brakes on the front wheels and conventional drum type brakes, with mechanical brake shoes, on the rear wheels. Both types of brakes were operated by a single master cylinder, which generated equal or uniform hydraulic pressure to all wheels under brake pedal application. A metering valve and a proportioning valve were incorporated into the system to insure uniform braking action to the front and back wheels.
The metering valve was located between the master cylinder and the front disc brakes. Its function was to prevent or delay the transmission of hydraulic pressure to the front disc brakes until the level of 100-125 P.S.I. (pounds per square inch) was reached, that being the level required to overcome the spring tension which retained the rear brake shoes away from the wheel drums. After that amount of pressure was applied, however, the metering valve permitted the passage of whatever pressure then existed in the system to all four wheels, and they jointly began to feel the effect of the braking action.
The proportioning valve was situated between the master cylinder and the rear wheels. It did not become operative until the pressure level reached about 450 P.S.I. At that point the proportioning valve began to reduce the level of the pressure which was permitted to go to the back wheels, while allowing whatever pressure existed in the system to flow to the front wheels to compensate for the forward shifting of weight which occurred in rapid deceleration.
Plaintiff and the defendants, Dr. and Mrs. Tackett, contend that the metering and proportioning valves in the Lincoln automobile were defective, and that these defective valves were the proximate cause of the accident. Plaintiff alleges in her petition, and Dr. and Mrs. Tackett allege in their answer and third party petition, that Ford Motor Company, Wray Lincoln-Mercury and Many Motors were negligent in manufacturing, assembling and selling the automobile with defective brake valves, or in failing to inspect, discover, replace or repair the valves before the car was delivered *639 or returned to the purchaser. Ford, Wray Lincoln-Mercury and Many Motors deny that there was any defect in the braking system of the car. They contend that the sole proximate cause of the accident was the negligence of the driver in driving at an excessive rate of speed under existing weather conditions and with badly worn tires, and in failing to maintain proper control of the vehicle as it approached a curve in the road.
Mrs. Tackett, the only surviving witness to the accident, testified that as she approached the curve, she "touched" her brake pedal to reduce her speed, that the car then started "fishtailing" or "skidding" or "twisting" on the highway, and that she lost control of it. She did not see the Lewis vehicle approaching her until after she was in the curve and had lost control of her own automobile.
Mrs. Tackett's testimony was weakened to some extent by the fact that she informed the investigating State Trooper a few minutes after the collision occurred that she was traveling at a speed of about 55 miles per hour as she entered the curve, and that she lost control of her vehicle without knowing the specific cause of the accident. In relating the facts to the Trooper at that time she did not mention anything about applying her brakes. The same investigating officer visited Mrs. Tackett in her home the next day, and at that time she mentioned that "they had been having trouble with their brakes," but she did not state that the condition of the brakes caused her to lose control of the car. Also, on the day after the accident occurred, Mrs. Tackett signed a written statement describing the manner in which the accident occurred, and in that statement she said: "I was thinking to myself about the road condition and how slippery it was * * *. As I started into the curve I felt the rear end of my automobile begin to fishtail slightly. I did not put my foot on the brake as I recall, however, I do not remember whether I took my foot off the accelerator or not. The vehicle straightened momentarily and then began to skid or turn sideways in the road." At the trial, she explained that in giving the last mentioned written statement she meant simply that she did not remember applying her brakes after the car began skidding or after she lost control of it.
The investigating trooper testified that he did not remember seeing any skid marks on the pavement or on the shoulder of the highway at the scene of the accident.
Dr. and Mrs. Tackett both testified that they continued to drive the Lincoln automobile during the ten month period immediately preceding the accident despite the fact that the rear wheels intermittently skidded when the brakes were applied. Dr. Tackett stated that he became frustrated by May, 1966, after several inspections of the brakes had been made, and after work had been performed on them several times by the manufacturer of the car, by the dealer which had sold it and by Many Motors. He said that after May, 1966, he simply accepted without further complaints the "little skid" which continued to recur in the rear wheels of the car, and that he made no further effort after May 11, 1966, to have the brakes inspected by Ford or by any mechanic.
Alvin Doyle, who was qualified as a brake expert, testified that he examined the Lincoln's braking system on April 21, 1970, and found that the rear wheels were getting more braking effect than the front ones. He then removed the metering and proportioning valves from the car and subjected them to laboratory tests in Baton Rouge, consisting primarily of static hydraulic pressure tests. He testified that these tests revealed that the proportioning valve was defective, in that it failed to maintain the proper rear brake pressure reduction at pressures greater than 450 P.S.I. He also found that the metering valve was defective, in that it continued to delay pressure to the front brakes at pressures approaching 200 P.S.I., rather than releasing it at the proper 125 P.S.I. range. Finally, *640 he found that 75 percent of the tread on the rear tires of the Lincoln automobile had been worn off. Although Doyle was unable to determine what caused the valves to malfunction, he felt that a Lincoln automobile entering a curve on a wet highway at 55 miles per hour, with slick tires, was not inclined to skid, but that a defective metering valve could cause a premature rear wheel skid by causing the rear brakes to grab. He stated that in his opinion a light "tapping" of the power brake pedal could generate a pressure of 450 P.S.I., sufficient to activate the proportioning and the metering valves, and that it would produce a mild, gradual braking action.
Dealership repair orders admitted into evidence in connection with the testimony of the owner of Wray-Lincoln-Mercury indicate that the Tackett vehicle's brake system was first inspected by that dealership on September 11, 1965, and that the brake system was modified in accordance with a nationwide brake campaign on October 28, 1965. The car was again inspected by that dealer on November 11, 1965, and upon finding that the rear brake shoes were "hard and glazed causing brakes to grab" the brake shoes were replaced on November 13, 1965. The front brakes were found to have had "hard and crystalized linings" on November 16, 1965, and on that date those linings were replaced. The car was checked again by Wray Lincoln-Mercury on April 2, 1966, and at that time the brakes were found to work properly.
The brakes on the Lincoln automobile were inspected and road tested by William T. Hollis, service instructor for the Lincoln-Mercury division of Ford Motor Company, on April 4, 1966. Hollis testified that the tests which he performed were negative, and that the brakes worked perfectly at that time. Later, on May 6, 1966, to satisfy Dr. Tackett's complaints, new metering and proportioning valves and front brake lining kits were installed in the brake system of the Lincoln automobile by Many Motors. The manager of Many Motors testified that after these parts had been installed the brakes were tested, that they were found to work perfectly, and that the wheels would not "lock up" when the brakes were applied. He stated that the original metering and proportioning valves which had been removed from the car were not defective, and that they were given to Dr. Tackett.
After the accident occurred a metering valve and a proportioning valve were found in the trunk of the Tackett car, but plaintiff and the Tacketts contend that they were the new valves, rather than the old ones, and that these valves thus had never been replaced. The valves found in the trunk of the car appear to us to be new ones, but we consider it to be immaterial whether the valves were replaced, since we have concluded that the brakes operated properly when the work done by Many Motors was completed.
The last pre-accident brake inspection of the automobile was performed on May 11, 1966, by John R. O'Sheridan, a service representative of Lincoln-Mercury Division of Ford Motor Company. He testified that on that date he examined and test drove the Tackett vehicle and found nothing wrong with the brake system. Dr. Tackett's primary complaint at that time, he said, related to loose front suspension ball joints which were found not to be defective. These front suspension ball joints nevertheless were replaced free of charge by Many Motors in order to satisfy Dr. Tackett.
About 22 months after the accident occurred, and before the inspection was made by Alvin Doyle, the wrecked Lincoln automobile was examined by Carl Schlagel, a brake expert of Ford Motor Company, and by Lewis Knight, a test driver for that company. These witnesses determined that there was no serious incompatibility of wear between the front and rear brake linings, that the wear present was consistent with the driving mileage of from 28,000 to 31,568 miles, that the brake system functioned reasonably well under pedal pressure, *641 and that all of the tires on the car, except the one on the right front wheel, were badly worn. They testified that a light "tapping" of the brake pedal would not generate the 450 P.S.I. pressure in the brake system needed to activate the proportioning valve, that if the amount of pressure required to activate a normal proportioning valve had been generated it would have caused a driver traveling at a speed of 60 miles per hour noticeable discomfort. Knight testified that "snub tests" performed by him on other 1965 Lincoln automobiles under controlled conditions, revealed that about 19 pounds of brake pedal force was required to generate 400 P.S.I. in the brake system, and that this is considerably more brake pedal pressure than a "light tapping" would produce.
Photographs introduced into evidence in connection with the testimony of Schlagel and Knight show that all of the tires on the Lincoln automobile, except the one on the right front wheel, were worn almost entirely slick at the time of the accident.
David T. Ayers, a products design engineer for Kelsey-Hayes, the manufacturer of the valves in question, examined during the trial the proportioning valve which had been removed from the Lincoln automobile a few weeks earlier by Doyle. Ayers testified that a burred pressure adjustment nut on the proportioning valve indicated that the original factory pressure reduction setting of 460 P.S.I. had been increased to 600 or 650 P.S.I. by someone after the valve left the factory. He further observed that the collision itself, coupled with the fact that the car remained idle for more than three years between the date of the accident and Doyle's inspection of that valve, would adversely affect its functions and would render Doyle's pressure tests unreliable. Ayers did not disassemble the proportioning valve, however, so he was unable to state whether it had corroded. Doyle did disassemble the proportioning valve after he had removed it from the wrecked Lincoln car. Doyle stated that no corrosion had developed in the valve by the time he tested it on April 21, 1970, and he denied that he tampered with the valve pressure setting. Doyle also admitted that the front disc brakes were "pretty well rusted from standing" by the time he examined the car, and that that condition affected his tests. He felt, however, that the rust would cause "more braking effect" on the front wheels, and he considered that in forming his conclusions.
The uncontradicted evidence shows that the northbound Tackett vehicle invaded and crossed the southbound lane, and collided with the approaching Lewis automobile on the west side of the highway. This evidence makes out a prima facie case of negligence against Mrs. Tackett, and the burden of proof thus rests upon her to show by clear and convincing evidence that her sudden presence in decedent's lane of traffic was due to an unexpected and unforeseen circumstance or defect over which she had no control, and that she did not contribute to the accident in any way. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957); Davis v. Roberts, 159 So.2d 511 (La.App. 1 Cir. 1963); LeBourgeois v. Indiana Lumbermens Mutual Insurance Company, 101 So.2d 720 (La.App. 1 Cir. 1958).
We think plaintiff and the Tacketts have failed to meet this burden of proof. The evidence convinces us that the brakes on the Tackett automobile were not defective when the collision occurred. Assuming arguendo, however, that the brakes were defective, as contended by plaintiff and the Tacketts, the evidence shows that Mrs. Tackett did not at anytime apply her brakes with sufficient force to cause those alleged defects to affect her handling of the car. The defect in the proportioning valve and in the metering valve, therefore, assuming for the purposes of this case that they were defective, could not have been a proximate cause of the accident.
Some of the facts which we considered to be of particular significance, and which we think compel the conclusions which we *642 have reached, are that experts examined the automobile on April 4, and on May 6 and May 11, 1966, and on each of those occasions found the brakes to be working properly. After the last mentioned date, Dr. and Mrs. Tackett drove the automobile for ten months and for 18,501 miles without making any complaints as to the condition of the brakes, without taking the car in for any further repairs to the brakes, and without any apparent difficulty in operating the automobile. Two other experts examined the Lincoln automobile 22 months after the accident occurred, and they found that there were no defects in the brake system, and that the wear on the brakes was normal for the distance the car had been driven.
We have carefully considered the expert testimony of Alvin Doyle to the effect that the brakes were defective and that the defects which he found could have caused the rear wheels of the car to grab or to skid as Mrs. Tackett was attempting to negotiate a curve in the road. Mr. Doyle, however, did not examine the automobile until more than three years after the accident had occurred. The car was not in running condition, so he could not operate it on a highway. And, his tests were affected to some extent by the fact that the front disc brakes had rusted considerably. We, therefore, do not consider the tests made by him to be as reliable as those which were made by other experts before the accident, while the automobile was operating. The evidence also convinces us that the defects in the braking system which Mr. Doyle found, assuming that they existed at the time of the collision, had no causal connection with the accident, because Mrs. Tackett had not applied enough pressure on the brake pedal to cause those defects to affect her handling of the car.
We are convinced that the accident resulted from the negligence of Mrs. Tackett in driving at an excessive rate of speed under the existing weather conditions, with full knowledge of the fact that the pavement was wet and slippery, that there was a curve in the road, and that the tires on her car were badly worn. Her negligence in that respect, and in failing to maintain proper control of her car, was a proximate cause of the accident.
We turn now to the question of whether the manufacturer, seller or repairer of the automobile were negligent, and thus whether they also are liable for the damages sustained by plaintiff, or by any of the third party plaintiffs, as a result of this accident.
The general rule is that the manufacturer or seller of a product which involves a risk of injury to the user is liable in tort to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacturer of the article, if the injury might have been reasonably anticipated. Cartwright v. Chrysler Corp., 255 La. 597, 598, 232 So.2d 285 (1970); Foy v. Ed Taussig, Inc., 220 So.2d 229 (La.App. 3 Cir. 1969).
An automobile repairman also may be held liable for personal injuries sustained after he had made repairs to the motor vehicle, if the evidence establishes that the repairman was negligent in making the repairs, that there was a causal relationship between the negligent repair work and the subsequent accident, and that the negligence of the repairman was a proximate cause of the accident. Foy v. Ed Taussig, Inc., supra; Portier v. Marquette Casualty Company, 150 So.2d 882 (La.App. 2 Cir. 1963).
In the instant suit we have found that the brakes were not defective at the time the accident occurred. And, even if we assume that the brakes were defective, we have determined that they were not applied with sufficient force to cause them to malfunction even with that defect, and that there thus was no causal relationship between the alleged defect in the braking system of the car and the accident.
*643 Since the condition of the brakes had nothing to do with the accident, it necessarily follows that there is no liability on the part of the manufacturer, the seller, or the repairer of the Lincoln automobile. The portions of the judgment appealed from, therefore, which condemn Ford Motor Company, Wray Lincoln-Mercury, Inc., and Many Motors Company, Inc., to pay sums of money to third party plaintiffs must be reversed.
It is argued in behalf of Dr. and Mrs. Tackett that if the jury verdict should be found to be erroneous for any reason the case must be remanded to the trial court for a new trial, because "the fundamental and constitutional right to a trial by jury precludes the appellate court from substituting its judgment for that of the jury and trial court."
Ordinarily, the findings of fact by a trial judge or jury, particularly those involving the credibility of witnesses, are entitled to great weight on appeal, and the conclusions of the judge or the jury as to the facts will not be disturbed unless found to be clearly erroneous. Huntsberry v. Millers Mutual Fire Insurance Company, 205 So.2d 617 (La.App. 3 Cir. 1967). The appellate court, however, is under the duty of reviewing the facts as well as the applicable law in a civil case, even though tried by jury, and although the jury's verdict is entitled to great weight the court is duty bound to set aside the verdict of the jury if it considers it to be clearly wrong. La. Const. Art. 7, § 10; Crier v. Marquette Casualty Company, 159 So.2d 26 (La.App. 4 Cir. 1963); Johnston v. Bearden, 127 So.2d 319 (La.App. 2 Cir. 1961); and Dore v. Hartford Accident & Indemnity Company, 180 So.2d 434 (La.App. 3 Cir. 1965).
In the instant suit the jury made several special findings on a "Form Verdict," but some of its findings cannot be reconciled with the facts or with other findings, and we thus are unable to determine on what facts the jury may have based its verdict. One special finding, for instance, is that plaintiff is entitled to recover the aggregate sum of $125,000.00 solely from Dr. and Mrs. Tackett, and not from any other defendant. Another is that, although none of the other original defendants were found to be liable to plaintiff, Dr. and Mrs. Tackett were awarded $115,000.00, that being the major part of the amount awarded to plaintiff, from Ford, Wray Lincoln-Mercury and Many Motors. And, a third special finding is that Wray Lincoln-Mercury and Many Motors are entitled to a verdict against Ford for $25,000.00. It is inconsistent, we think, to find that Ford, Wray Lincoln-Mercury and Many Motors are liable to Dr. and Mrs. Tackett for a part of the total award, and yet they are not liable to plaintiff for anything. We cannot reconcile the finding that Wray Lincoln-Mercury and Many Motors may recover an arbitrary sum of money from Ford, although the first two named defendants are not liable to plaintiff. Also, the judgments rendered against Ford, including those rendered in solido with other defendants, exceed the aggregate amount awarded to plaintiff.
We feel that the jury clearly erred in finding that Dr. and Mrs. Tackett, as third party plaintiffs, are entitled to recover from Ford, Wray Lincoln-Mercury or Many Motors, and that the jury also erred in finding that the last two named defendants are entitled to recover from Ford. Since all of the facts are in the record and the appellate court has the right to review the facts, we feel that the ends of justice would be served best by correcting the erroneous verdict of the trial court here, rather than remanding the case for a new trial.
Our conclusion is that the jury was correct in concluding that plaintiff is entitled to recover against Dr. and Mrs. Tackett, and that Continental Casualty Company is entitled to be reimbursed with preference out of the sums awarded plaintiff for the *644 compensation benefits which it has paid. We think it erred, however, in allowing the above mentioned third party demands.
Judgment was rendered by the trial court awarding $32,100.00 to Mrs. Lewis, individually, $38,200.00 to her as tutrix of her minor son, Kenneth Lewis, Jr., and $54,700.00 to her as tutrix of her minor daughter, Velencia Ann Lewis. Plaintiff concedes that the awards made for her two children are adequate, but she contends that the award made to her, individually, should be increased. Dr. and Mrs. Tackett have submitted no arguments as to quantum, so the only question presented is whether the award made to Mrs. Lewis, individually, should be increased.
The evidence shows that the decedent and Mrs. Lewis had been judicially separated for a period of approximately 18 months before this accident occurred. The custody of the children had been awarded to Mrs. Lewis, and they had been living with her continuously since the date of the separation decree. The court had ordered Mr. Lewis to pay the sum of $275.00 per month for the support of his wife and children, and he had made those payments regularly. Mrs. Lewis testified that, although she and the decedent were separated, she respected him and depended upon him for advice in matters relating to the raising of the children.
After considering all of the circumstances, we feel that the award made to Mrs. Lewis, individually, was adequate and should not be disturbed.
For the reasons assigned, we hereby reverse those portions of the judgment appealed from which decree: (1) That judgment be rendered in favor of third party plaintiffs, Dr. and Mrs. Tackett, and against third party defendants, Ford Motor Company, Wray Lincoln-Mercury, Inc., and Many Motors Company, Inc., for $115,000.00; and (2) that judgment be rendered in favor of third party plaintiff, Wray Lincoln-Mercury, Inc., Many Motors Company, Inc., and Universal Underwriters Insurance Company, against Ford Motor Company, for $25,000.00. The judgment appealed from is affirmed in all other respects, and particularly insofar as it decrees judgment in favor of plaintiff, Mrs. Angie R. Lewis, individually and as tutrix of her two minor children, against Dr. and Mrs. Leonard O. Tackett, and insofar as it decrees judgment in favor of Continental Casualty Company. All costs of this appeal are assessed to defendants, Dr. and Mrs. Leonard O. Tackett.
Affirmed in part and reversed in part.