CULPEPPER, Judge.
The plaintiff, Leonard A. McFatter, seeks damages for the loss of 27 sheep allegedly killed by a dog owned by the defendant, Robert H. Welch. The trial judge awarded plaintiff the sum of $405. Defendant appealed.
Since no one actually saw defendant’s dog kill the sheep, the issue is whether the circumstantial evidence presented is sufficient to prove it.
A special statute, LSA-R.S. 3:2651, provides that “Any owner, harborer, or possessor of any dog that kills, harasses, or wounds sheep, shall be liable to the owner of the sheep for the damages sustained * * LSA-R.S. 3:2652 provides “ * * * it shall not be necessary for the plaintiff to show that the owner, harborer, or possessor of the dog had knowledge of the fact that the animal would kill, harass, or wound sheep.”
Our jurisprudence is established that a party relying upon circumstantial evi *608 dence must make a showing which excludes, with a fair amount of certainty, every other reasonable hypothesis but the one relied on, Lanza Enterprises, Inc. v. Continental Insurance Co., 142 So.2d 580 (La.App.3rd Cir.1962), and the authorities cited therein.
With these rules in mind, let us examine the evidence in this case. Defendant admitted that in January of 1967, when the first sheep were killed, he owned a large “half Blue-tick and half Catahoula dog”, which he allowed to run loose on the open range near his home in Ward 6 of Beauregard Parish. Defendant also admitted that his dog had been “playing around” with a slightly smaller dog owned by a neighbor, Pierre Trahan. This is the same general area in which plaintiff lives and runs a considerable number of sheep, both on land he owns and on the open range.
On Friday, January 20, 1967, Mr. Albert Hagar, a 69 year old native of Ward 6, found a dead sheep near the properties in question. He testified that from the physical evidence he could tell it was the work of a dog “by the biting. The dog had bit (sic) the sheep in the throat.” He said he had considerable experience with sheep-killing dogs and this is characteristic of the way a dog will kill a sheep. From the earmark on the sheep, Mr. Hagar knew that it belonged to plaintiff, to whom he reported the incident.
The next morning, Saturday, January 21, plaintiff went to investigate. He is 57 years of age and has lived in Ward 6 all of his life and had long experience in the sheep business. In addition, he is an experienced trapper of wolves and knows wolf tracks from dog tracks and the difference in the ways they kill sheep. Dogs run the sheep for sport, kill them by slashing their throats and leave the carcasses without eating them. Wolves kill only to eat.
Plaintiff testified he went to the area where Mr. Hagar had found the carcass. As he drew near he saw a lot of dog tracks. Then he saw two large dogs about 20 feet from a sheep which had been bitten on the neck and on the hind leg. Plaintiff had a shotgun and'he was on horseback. He fired at one dog (later determined to be the Tra-han dog) and thought he hit the animal because he knocked him down. He then started chasing the other dog, firing from his horse as he ran. The dog ran straight to the Welch home about one-half mile away.
When plaintiff reached the defendant’s home he first talked to Mrs. Welch, who admitted the dog was theirs. Then Mr. Welch came up and he also admitted owning the dog. About that time defendant’s 8 year old daughter walked up and said that she had seen the dog chasing sheep. Defendant, at the trial, admitted his daughter made such a statement, but he attempted to explain it away by saying “she makes up stories.”
During the conversation on that Saturday, January 21, defendant promised to send the dog to his brother-in-law, Sam Little, but he says he could not contact Mr. Little. Defendant says that he later talked to a sheep man who told him that if a dog had been killing sheep there would be wool in his teeth. He says he checked his dog’s teeth and found no wool, so he decided not to dispose of the dog. Defendant himself is not a sheep raiser. He has a few cattle, but he spends most of his time at work as a welder in Westlake.
After plaintiff learned that defendant had not disposed of the dog, but was continuing to allow it to run at large, he apparently decided to take steps to force Mr. Welch to dispose of the animal. Plaintiff made an extensive search of the area to determine how many sheep had been killed by the dog. On January 26 he counted 8 sheep that had been killed by dogs, as evidenced by dog tracks around the sheep and the way in which the sheep had been run and killed. On. January 28 he enlisted the help of his son and two neighbors who made a more thorough search of the area and they found 24 sheep which had been killed by dogs. Later plaintiff found three more sheep which had been killed by one large dog. All of these sheep were in an area near the de *609 fendant’s home. These witnesses testified positively that they knew the difference between dog tracks and wolf tracks and the manner in which these respective animals kill sheep and that the killing was the work of dogs.
Plaintiff’s able attorney summarizes the circumstantial evidence as follows:
“Defendant had a large dog which roamed at large with a dog belonging to Trahan. Mr. Hagar found a dead sheep not far from the Welch property which he was positive had been killed by a dog. Leonard McFatter saw two dogs within fifteen (or twenty) feet of a mutilated sheep which had been freshly bitten in the neck and in the rear legs. At that time the two dogs were approximately one-half mile due west of the Welch home. Mr. McFatter chased one of the dogs to the Welch residence and Mr. and Mrs. Welch admitted the dog belonged to them. One of the Welch children told Mr. Welch in the presence of Mr. McFatter that she had seen the dog chasing sheep. Investigation revealed that twenty-seven sheep had been killed on the range near the Welch property and two sets of dog tracks were found near the dead sheep. According to Mr. McFatter, an experienced trapper, the tracks around the dead sheep matched the tracks of the two dogs he had seen near the wounded sheep on Saturday, January 21, 1967. There was no evidence offered by defendant to show that the sheep died from natural causes or that they were killed by other dogs or by wild animals.”
We think there was sufficient circumstantial evidence which, if believed by the district judge, as it obviously was, excludes every reasonable hypothesis but that the sheep were killed by defendant’s dog.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.