238 So.2d 750 (1970)
UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellant,
v.
Ora HYAMS et al., Defendants-Appellees.
No. 3166.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1970.
Gahagan & Kelly, by Donald G. Kelly, Natchitoches, for plaintiff-appellant.
Cunningham & Cunningham, by W. Peyton Cunningham, Watson, Brittain & Murchison, by Richard R. Storms, Natchitoches, Stafford, Pitts & Bolen, by J. Michael Small, Alexandria, for defendants-appellees.
Before FRUGÉ, CULPEPPER, and MILLER, JJ.
FRUGÉ, Judge.
This is a suit for damages arising out of a fire which completely destroyed a commercial building and damaged a residence owned by D. Bailey Thaxton. United States Fidelity and Guaranty Company, Thaxton's insurer, seeks $3,463.62 from the defendants as reimbursement for sums it paid Thaxton as a result of the fire. The trial court denied plaintiff's demands, and plaintiff appeals.
*751 The plaintiff contends that the judgment of the trial court was erroneous in two respects: First, in failing to find the burning of leaves by Miss Ora Hyams to be the proximate cause of the fire and the damage to the Thaxton property, and secondly, in not finding the Ducournaus and their insurer, Hanover Insurance Company, to be liable for damages suffered by Thaxton by virtue of Louisiana Civil Code Article 667.
The Thaxton commercial building was adjacent to a building owned by A. L. Ducournau and his sisters. The Ducournaus rented part of the building to Miss Ora Hyams, as living quarters. Also on the Ducournau property was a small shed or garage used for storing tools, preserved foods, and other items. This structure was to the rear and west of the Ducournau building and was some 32 to 48 inches from the Thaxton commercial building.
On the morning of October 28, 1967, Miss Hyams raked the leaves in the yard of the Ducournau property into a stack approximately 10 or 11 feet from the shed and burned them. She then went to the post office and when she returned some forty-five minutes later, the Thaxton commercial property and the Ducournau shed were both burning.
In regard to the first specification of error, the issue presented is whether or not the plaintiff proved by a preponderance of the evidence that the fire on the Thaxton property was caused by Miss Hyams' leaf-burning activity. The plaintiff, relying on circumstantial evidence, must exclude every other reasonable hypothesis as to the cause of the fire with a fair amount of certainty in order to prove its case. McFatter v. Welch, 205 So.2d 607 (La.App. 3d Cir. 1967); Gassiott v. Gordey, 182 So.2d 170 (La.App. 3d Cir. 1966).
Miss Ora Hyams is a retired school teacher and had been a tenant in the Ducournau building for approximately fourteen years at the time of the fire. It seems that she was a rather fastidious lady who endeavored to keep the yard neat and free of leaves. Every fall she would rake the leaves and burn them. She readily admitted that she burned leaves quite often and had done so on the morning of the fire. But she insisted that she was always very cautious when she burned leaves. She described how she burned the leaves in the following testimony beginning at page 236 of the transcript:
"Q. Did you rake up the leaves between the compost pile and the pile that was burning?
"A. I did.
"Q. Were there any leaves on the ground between them?
"A. Not that I remember.
"Q. You put a match to the pile of leaves, and then what did you do?
"A. I had my hose with me; it is a hundred feettwo fifty-foot hoses.
"Q. About where you were burning this pile of leaveswhat is the situation with reference to the trees, building, and shelter from the wind?
"A. Well, I have a great big round bed with lilies and different things in it on the lefthand side and concrete is on the south side, and it is kind of protected from the building.
"Q. When you lit the fire, was the wind blowing?
"A. Not that I know of, not too much not enough that it would count."
Then at page 238:
"Q. How long did you remain there at the fire?
"A. As long as it was burning.
"Q. Then what did you do?
*752 "A. When it burned down, I used my hose and watered it down all around.
"Q. And then did you go anywhere?
"A. Yes.
"Q. Where?
"A. I went in the house and got ready to go to the post office."
Again at page 239:
"Q. Miss Ora, did you ever in your years there light a pile of leaves and go off and leave them?
"A. I did not."
Mrs. Lillie Belle Smith, also a tenant residing in the Ducournau building, testified that Miss Hyams was always careful in her leaf-burning activity. At page 271 of the record she gave the following testimony:
"Q. Does Miss Ora Hyams also live in that duplex?
"A. Yes, sir.
"Q. Did you ever observe her burning leaves?
"A. Yes.
"Q. On what occasion would she burn the leaves?
"A. Well, in the fall when the leaves were falling.
"Q. Did you ever observe the manner in which she burned the leaves?
"A. Well, she would rake them, burn them, and then water them down with a water hose.
"Q. Did you ever see her leave them unattended?
"A. No.
"Q. Where would she burn these leaves?
"A. Sometimes in the back and sometimes in the drive.
"Q. Did you ever feel it necessary to complain about her leaf-burning?
"A. I did not.
"Q. Did you ever complain to Mr. Ducournau?
"A. I did not.
"Q. Did you ever hear anyone else complain to Mr. Ducournau in your presence about the leaf-burning?
"A. No, sir."
Miss Pearl Bailes, another tenant at the Ducournau place, gave testimony essentially the same as that of Mrs. Smith.
The plaintiff's version of the fire is that Miss Hyams' leaf-fire spread to the small garage or shed either by the wind or by burning along a trail of leaves to the garage. When the garage began to burn, it ignited the Thaxton commercial building due to the close proximity of the structures.
The plaintiff attempted to prove its theory with testimony from various city officials and an investigator from the State Fire Marshal's office. Natchitoches Chief of Police Boyd Durr testified to the following on cross-examination at page 75 of the record:
"Q. Do you recall when you got the call to go to the scene of the fire?
"A. I think I was at the police station, when the call came in to it. Of course the fire station is next door to us and they come over and notified us.
"Q. Do you recall what time that morning you got the call?
"A. Not exactly, no, sir, I couldn't give you the minute, but I would say between eleven and twelve, but I couldn't give you the exact time.
"Q. Do you have any way of knowing how much time elapsed, how long *753 the fire had been burning before you got to the scene?
"A. I have no idea whatsoever, no, sir.
"Q. But you wouldn't have any way of knowing which way the wind was blowing at the time the fire started or anything like that, would you. You are not trying to tell us anything about that?
"A. No, sir, I couldn't tell you which way the wind was blowing when the fire started, or when it actually started.
"Q. You didn't make an investigation as to the actual cause, did you?
"A. No, sir, I did not.
"Q. As I understand it that is not a function of your office?
"A. No, sir, unless I am called upon to do so.
"Q. You were not in this case?
"A. No, sir.
"Q. You were talking earlier about your impressions as to which building had been burned the most. The Ducournau building is made of wood and the Thaxton building is made of brick?
"A. Yes, sir.
"Q. The exterior of the Thaxton building was of brick, isn't that correct?
"A. Yes, sir.
"Q. And Mr. Ducournau's was entirely of wood?
"A. Let me correct myself. The exterior to the side, or to the east side, was made of brick. I didn't survey the whole building or examine the complete building. I couldn't say the complete exterior of the building was made of brick. But I can say that the side that I observed first was the east side.
"Q. The west side would be the side * * *.
"A. Next to the cleaner's on the other side.
"Q. And the east side would have been the side next to Mr. Ducournau's property, is that correct?
"A. Yes, sir.
"A. And that was the side that was brick?
"A. Yes, sir.
"Q. Now, this pile of leaves that you saw burning, it is not your testimony that this is what caused the fire, is it?
"A. Let me say that the pile of debris that I saw there appeared to be leaves. It was pretty well consumed by fire at the time, but it appeared to be that the general area was in, I would say, eight or ten feet away from the structure of the garage, was also scorched and burned. But you could see that there was a pile of some type of debris or leaves or something that was there. It left a little bigger pile of ashes than ordinary grass or a normal amount of leaves on the ground.
"Q. Are you saying now that you don't know what that fire was caught up of?
"A. No, sir, I don't know what it was.
"Q. Are you telling us that this fire started there?
"A. No, sir, I am not saying that the fire started there. I don't know where the fire started."
Mr. James T. Leach, a Natchitoches fireman, was of the opinion that leaf fires can smoulder and can rekindle even after being watered down, if they are not stirred.
*754 Mr. Lee W. Robinson of the State Fire Marshal's office testified that there was "a lot of wind" on October 28, 1967, which he remembered because he attended a football game at Northwestern State College on that date, and "the quarterbacks were having trouble controlling and passing the football." He also said that when he investigated the fire on October 30, 1967, he noticed that leaves and trash had been burned around the Thaxton building. However, in filling out his report of the investigation, he listed the cause of the fire as being undetermined.
Plaintiff also introduced testimony to the effect that when some of the witnesses arrived at the scene of the fire, the Ducournau shed or garage was in a more advanced state of conflagration than was the Thaxton commercial building. The plaintiff contends that this proves that the fire started on the Ducournau property and spread to the Thaxton property. Defendants contend, however, that this proves nothing and can easily be explained by the fact that the Ducournau shed, which was all wood, was more flammable than the Thaxton property, which had a brick wall, and therefore would burn much more quickly.
It is a well established doctrine in our jurisprudence that the findings of fact by the trial court will not be disturbed on appeal unless they are manifestly erroneous. Although the trial court gave no written reasons for judgment, in view of its judgment in favor of Miss Ora Hyams it must have found as a matter of fact that the fire which destroyed the Thaxton commercial building was not started by Miss Hyams' leaf fire. In view of the positive testimony of how Miss Hyams conducted her leaf-burning activity and the speculative nature of the plaintiff's evidence attempting to show the fire was started by Miss Hyams' leaf fire, we do not find that the trial court was manifestly erroneous in its findings of fact.
The plaintiff's evidence, while indicating several possibilities, fails to show with the degree of certainty required by our jurisprudence that the fire damage to the Thaxton property was caused by Miss Ora Hyams.
Since the plaintiff failed to show any causal connection between the leafburning activity of Miss Hyams on the Ducournau property and the fire which destroyed the Thaxton property, the plaintiff is obviously not entitled to any relief whatsoever under Louisiana Civil Code Article 667.
Therefore, for the foregoing reasons, the judgment of the trial court is affirmed, at plaintiff-appellant's cost.
Affirmed.
MILLER, Judge (concurring).
It is my purpose to show that plaintiff's proof was substantially more impressive than indicated in the majority opinion.
Defendants' witnesses as well as numerous witnesses for plaintiffs established the following facts:
1. When the fire was discovered (less than one hour after Mrs. Hyams put out her leaf fire), a slight wind was blowing from the location of the leaf fire which she extinguished, to the Ducournaus' garage some 10 feet away, to the Thaxton building some 3 feet from the garage.
2. Mrs. Hyams maintained a compost pile adjacent to the Ducournaus' garage. The leaves in this compost pile were less than one year old.
3. The fire had almost consumed the Ducournaus' garage before the roof of Thaxton's brick building caught fire.
At Tr. 239, Mrs. Hyams described her pile of leaves as being two and a half feet high and six feet around. She later estimated that it was only "about three feet, *755 I think." Tr. 247. She testified that it took her 10 to 15 minutes to burn the leaves.
At Tr. 251
"Q. Then you watered it. For how long did you put water on this fire?
"A. Long as anything * * * just wet it all around."
At Tr. 252
"Q. At the time that you put water on this pile of ashes, was there any smoke arising from this pile of ashes?
"A. Well, the ashes are kind of hot after burning, and there is a little steam, when you put water on it. It is a steam."
But she was adamant that there was no steam or smoke coming out of the pile when she left it. She did not disturb the ashes.
On cross examination of defendants' witnesses Fire Chief Prince E. Gant (Tr. 286.7) and Fireman James T. Leach (Tr. 288), plaintiffs established that fires will smoulder for a long time after having been watered; that it is not unusual for these to "catch back up." This is also true of leaf fires.
Leach's testimony was
"Q. Well, in connection with leaf fires, have you ever seen any that have been washed down then come back up again?
"A. Well, usually we stir them to be sure they are all out. But if you don't they will come back up."
Mrs. Hyams admitted that she talked to Mrs. Thaxton on the day of the fire. She did not deny that she told Mrs. Thaxton that "I guess you would like to shoot me." When asked why she made that statement, Mrs. Hyams answered"Well, because it was on my side, the fire was on my side." Tr. 245.
Mrs. Pearl Bailes occupied an apartment in the same building with Mrs. Hyams. She testified that Mrs. Hyams was "heart-broken about the fire * * *" Tr. 277.
But just as these facts support plaintiffs' claim, I am impressed that all testimony concerning Mrs. Hyams, uniformly praised this retired school teacher. She was a most desirable neighbor, and was always careful. While Mr. Thaxton had complained to the police a year or two before, neither the police nor Mr. Thaxton made these objections known to Mrs. Hyams. It seems that the complaint was related to smoke which bothered Thaxton's tenants.
I am concurring rather than dissenting because I do not find that the wrong which Mrs. Hyams may have committed is sufficient to support a judgment against her.