HOOD, Judge.
Plaintiff, Laris Hebert, instituted this suit against Big Jim’s, Inc. to set aside the sale of a house trailer because of an alleged redhibitory vice, and to recover the full amount of the purchase price which plaintiff paid to defendant for that trailer. Laris Hebert died before the case was tried, and Mrs. Lenia Lacombe Hebert, the duly appointed administratrix of his succession, was substituted as plaintiff in his stead. Judgment on the merits was rendered by the trial court in favor of plaintiff, and defendant has appealed.
The sole issue presented is whether plaintiff has established by a preponderance of the evidence that a vice or defect sufficient to void the sale existed in the trailer at the time it was sold.
The evidence shows that on November 11, 1968, Laris Hebert purchased a new Valiant house trailer from Big Jim’s, Inc., a mobile home retailer in Lafayette, Louisiana. The purchase price of $3,550.00 was paid by Hebert. About five days later defendant delivered the trailer to a site designated by Hebert in the City of Crowley, and defendant positioned the trailer on a block foundation at that location. The necessary utility connections were made to the trailer a few days thereafter.
On December 2, 1968, plaintiff’s son-in-law and his daughter, Mr. and Mrs. Ricky James Wriborg, moved into the trailer and began occupying it as their home. They continued to live in the trailer for a period of a little more than six weeks, until January 17, 1969, when the trailer was completely destroyed by fire.
Wriborg testified that at about 5:30 a.m. on January 17 he noticed smoke emanating from a hole in the bathroom floor of the trailer, which hole had been cut to permit the installation of a washing machine drain. He immediately called the fire department, and a fire truck arrived at the trailer within a few minutes after that call was made. The fire progressed rapidly after it was first discovered, however, and by the time the fire fighting equipment arrived most of the bathroom was in flames. Although the firemen were able to extinguish the blaze within a period of about 30 minutes, the evidence establishes that the trailer was a total loss.
Plaintiff contends that the fire was caused by a defective or an improperly installed electrical outlet under the floor of the trailer. Defendant contends that the *86 evidence fails to show either that the outlet was defective or that it was the' cause of the fire.
The electrical outlet which plaintiff contends was improperly installed was an outside receptacle located under the floor of the bathroom of the trailer. The trailer was not moved between the time it was put on blocks and the date of the fire. Its position during that time was such that the bathroom was bounded on the north and south by bedrooms, on the east by the east outside wall of the trailer, and on the west by a hallway. The bathtub was located in the extreme east side of the bathroom, adjacent to the outside wall.
There was a double floor in or under the bathroom. The top floor was constructed of fir, about five-eighths of an inch thick, covered with a linoleum-type cushion which formed the walking surface in the bathroom. The bottom floor was constructed of pressed wood, about three-eighths of an inch thick, and it was located either four or six inches below the top floor. The two floors were separated by sills or beams, either four or six inches thick, the evidence not being clear as to the size sills which were used. These sills ran the length of the trailer, the top floor being attached to the upper side of these sills and the bottom floor being attached to the lower side of them. The lower floor, of course, formed the bottom or outside covering of the trailer, and it was exposed to the weather.
The electrical outlet which concerns us here was attached to the bottom floor of the trailer, under the bathtub, near the northeast corner of the bathroom. The outlet itself consisted of a receptacle box, with the necessary wiring in it, and a weatherproof outside cover. A hole was made in the bottom floor of the trailer, and the receptacle box was inserted in this hole and fastened there with screws, so that the back or closed portion of the box was uppermost, and the front or open side of it was facing downward. The weatherproof cover, made of composition rubber and equipped with two hinged lids, was then attached to the under side of the trailer and fastened with screws so that it covered the open part of the receptacle box. The purpose of this installation, of course, was to provide an electrical outlet for appliances to be used outside the trailer. In order to use that outlet, of course, the person plugging an appliance into it would have to reach under the trailer while standing outside of it and plug the appliance wire into one of the two sockets which formed a part of the outlet. Actually, the outlet was never used prior to the time the trailer was destroyed.
The receptacle box which was used for this outlet was not made of metal, but instead was made of a substance which appeared to be and was described as being pressed fiber or pressed wood. The evidence shows that the material used in making that box, whatever it might be called, was either flammable or was incapable of withstanding heat, because after the fire it was found that the entire back portion of the receptacle box, that is the part of it which was uppermost or nearest the top floor, had burned out or had completely disintegrated, leaving the burned wiring which formerly was inside the box fully exposed. No metal conduits were used in connection with the wiring of this outlet, and apparently no other precautions were taken to prevent moisture from getting into the receptacle box. The evidence shows that a part of the bottom floor, about 10 to 18 inches in diameter, was burned all around this particular receptacle, and that the greatest fire damage occurred in the lower part of the east wall of the trailer, immediately above this outlet, and in a linen closet in the northeast corner of the bathroom, very near and just above this electrical outlet.
Four expert witnesses testified at the trial. One of them was John W. Andrus, Chief of the Crowley Fire Department, who was qualified as an expert in fire detection and prevention. Chief Andrus arrived at the scene of the fire about the time the fire truck got there, and he made a thorough investigation as to the cause of the con *87 flagration while the trailer was ablaze and after the fire had been extinguished. As a result of his investigation, he concluded that the fire was centered in and was confined to the bathroom, that it started in the northeast corner of the bathroom, “partly in the floor and in this corner,” and that the above-described electrical outlet was the only possible source of ignition for the fire. He checked the heating system in the trailer, the hot water heater and the other electrical outlets, and he ruled all of them out as possible causes of the fire. •
Fred Kiesel, who was qualified as an expert electrician, inspected the trailer about three hours after the fire occurred. He concluded that the fire was triggered by an electrical short occurring within the above-described outlet itself,. that the short was most likely caused by the accumulation of moisture in the receptacle box or the improper wrapping or bruising of the wire inside that box, that the location of the outlet beneath the bathroom was dangerous because of its proximity to water leaks or moisture originating in the bathroom, and that the receptacle box itself,'although U.L. approved, was not suitable or safe for use with external outlets. He testified that a weatherproof, cast-iron type receptacle box, with metal conduits and threaded hubs, should have been used for this outlet, and that if these standard precautions had been taken the box would have contained the heat or the fire resulting from a short within the box. He also testified that the receptacle box which was used for this outlet rendered the ground wire attached to it useless, since the pressed fiber material of which it was constructed was not a conductor of electricity, and that the receptacle box used did not provide proper insulation against water and moisture from the bathroom.
Leonard Gray, the chief serviceman for Big Jim’s, Inc., was qualified as an expert in the field of trailer systems inspection. He testified that he customarily checks all trailers which are sold by the defendant, and that his inspection includes a check of all electrical receptacles by means of a “volt tester.” Although he does not recall testing this particular trailer, he stated he is certain that he did so and that he found the electrical outlet which is involved in this suit to be all right. He concedes, however, that he is not an electrician, that the test he made would show only the voltage in that outlet, and that it would not show any defects other than an irregularity in the current which flows through the outlet.
Oscar Fisher, the “final check-out inspector” employed by Valiant Mobile Homes, of Thomasville, Georgia, the manufacturer of the trailer, was qualified as an expert in constructing and building this type of trailer and as a trailer inspector. He testified that he inspected all trailers before they leave the factory, and that although he does not recall checking this particular trailer, he knows that he did because he signed the inspection report for it. His inspection, he stated, includes checking the entire electrical system by means of a “high pot” test. This test is performed by connecting the trailer with an electrical power supply containing from 900 to 1000 volts, and it is designed to reveal any weakness or defects in the wiring or insulation in the electrical system. Fisher stated that the “high pot” test which was run on this trailer showed no defects in it. He admits, however, that he is not an electrician, that the test if performed in dry weather or in the absence of moisture would not reveal whether the receptacle boxes or insulation were weatherproof, and it would not reveal whether the electrical system would still be all right after the trailer had been transported from Georgia to Louisiana. Since the electrical system was tested before the trailer was used, we assume that moisture from the bathroom had not had an opportunity to collect in the electric receptacle box by the time the check was made.
The trial judge concluded that the fire “originated from the outside receptacle from a short circuit and/or defective wiring and that said outside utility was such as to cause the sale to be voided by redhibition *88 under Civil Code Article 2520.” He found that a simple inspection would not have revealed the defect in this above-described receptacle box, and that the vice existed before the sale was made to plaintiff. In his written reasons for judgment, the trial judge observed that he was “impressed with Mr. Kies el’s knowledge on the subject,” and it is apparent that he relied to a great extent on the testimony of that witness.
There is no dispute as to the applicable law. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. LSA-C.C. art. 2520.
The buyer who initiates the redhibi-tory action must prove by a preponderance of the evidence that the alleged vice or defect in the thing sold existed before the sale was made. LSA-C.C. art. 2530. O’Malley v. Jones, 138 So.2d 445 (La.App. 3 Cir. 1962) ; Harding v. Ed Taussig Edsel Motors, Inc., 130 So.2d 517 (La.App. 3 Cir. 1961); Abraham v. Dalworth Machinery Co., 167 So.2d 185 (La.App. 1 Cir. 1964).
We think the evidence supports the trial judge’s conclusion that the receptacle box above described was defective, that the fire originated from a short in that receptacle, that the vice or defect would not have been revealed by a simple inspection of the trailer, and that the defect existed before the sale was made to plaintiff.
 Defendant argues that the opinions expressed by the expert witness, Kiesel, are unsupported by factual findings, and that they are based on speculation or conjecture. We do not agree. Kiesel inspected the trailer a few hours after the fire occurred, and our understanding of his testimony is that he based his opinions as to the cause of the fire on facts which he found in that investigation. It is true, as argued by defendant, that he found no moisture in the burned receptacle after the fire. But, he did observe that the receptacle box was badly burned and partially disintegrated, that a small area of the flooring around it was burned, and that there was substantial fire damage above and near this receptacle indicating that a fire had originated in or in the immediate vicinity of that receptacle. These facts, we think, form a substantial basis for his conclusion that the fire actually started from a short in the receptacle box. Kiesel offered two explanations as to what may have caused the short, the accumulation of moisture in the receptacle box being one of them. That opinion also was based on facts. The witness, for instance, determined the location of the receptacle with reference to the bathroom and the bathtub, he found that the box was not weatherproof and that a metal conduit was not used. These findings, we think, are sufficient to form a factual basis for the expert’s opinion, and they show that the opinions which he expressed as to the cause of the fire were not mere speculations or conjectures.
Defendant also takes the position that plaintiff is relying wholly on circumstantial evidence, and that he has failed to produce proof which excludes, with a fair amount of certainty, any other reasonable hypothesis but the one relied upon. It cites as authority for that argument the cases of McFatter v. Welch, 205 So.2d 607 (La.App. 3 Cir. 1967); Lambert v. State Farm Mutual Automobile Insurance Co., 184 So.2d 107 (La.App. 4 Cir. 1966); Lanza Enterprises v. Continental, 142 So.2d 580 (La.App. 3 Cir. 1962); O’Pry v. City of Opelousas, 124 So.2d 333 (La.App. 3 Cir. 1960). Defendant argues, for instance, that the source of the fire reasonably might have been the pilot light of the gas furnace in the trailer, or spontaneous combustion of oil mops kept in the kitchen cabinets, or vandalism, or a defect in the hot water tank, or a carelessly tossed match or cigarette by a guest, or other causes.
We are not willing to hold that plaintiff is relying wholly on circumstantial evidence. Assuming that he is, however, we *89 think plaintiff has adequately eliminated every reasonable hypothesis other than that the fire resulted from the defective receptacle. He has shown, for instance, that no fire originated around the furnace or the kitchen cabinets, that there was no evidence of vandalism, that there was no defect in the hot water tank, and that neither Mr. nor Mrs. Wriborg smoked. The two experts called by plaintiff could find no source of ignition except that the fire resulted from a defective or improperly installed outlet on the trailer.
Our conclusion is that the evidence supports the conclusions reached by the trial court, that the evidence establishes that at the time of the sale there was a vice or defect in the trailer which rendered it useless or so imperfect that it must be supposed that Hebert would not have bought it had he known of the vice. The judgment of the trial court thus must be affirmed.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.