305 So.2d 720 (1974)
FEDERAL INSURANCE COMPANY
v.
Oliver CINNATER d/b/a Crescent City Motors et al.
M. N. GROSSEL-ROSSI
v.
Oliver CINNATER d/b/a Crescent City Motors and Maryland Casualty Company.
Nos. 6480, 6481.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1974.
Lemle, Kelleher, Kohlmeyer & Matthews, William S. Penick, Leach, Grossel-Rossi & Paysse, Michael A. Britt, New Orleans, for plaintiffs-appellants.
Monroe & Lemann, H. C. Hoffmann, Stephen B. Lemann, Christovich & Kearney, A. R. Christovich, New Orleans, for defendants-appellees.
Before SAMUEL, SCHOTT and MORIAL, JJ.
*721 MORIAL, Judge.
Plaintiffs, M. N. Grossel-Rossi (Rossi) and Federal Insurance Company (Federal) appeal a decision of the district court dismissing their claims against Oliver Cinnater d/b/a Crescent City Motors and his liability insurer, Maryland Casualty Company (Crescent), and Mercedes-Benz of North America, Inc., and Daimler-Benz A. (Mercedes).
Plaintiff, Rossi, purchased a 1969 Mercedes-Benz coupe roadster through Crescent for $7,301.00. His wife took delivery and possession of the car in Germany in June of 1969 for the price of $7,301.00. The car was shipped via S.S. France to New York and was driven from there to his home in New Orleans. It was operated in and around New Orleans until some time in July 1970. When it had been driven approximately 8,220 miles and while on a trip to Lafayette, Louisiana on July 5, 1970 Rossi smelled a gasoline odor in the engine compartment while the car was parked at a motel. At this time Rossi made a visual and physical inspection for leaks around the fittings. He failed to observe or detect any leak. He drove the car home and parked it until the car was taken by him to Crescent on July 15, 1970 for warranty maintenance inspection and servicing. Rossi had again smelled the odor of gasoline coming from the area in the middle of the block around the fuel injection prior to bringing the car to Crescent City on July 15, 1970. When he left the car for servicing, Rossi advised Mr. Frois, Crescent's service manager, that he smelled gas after stopping the car and to check for a gas leak under the hood. To Rossi the leak appeared to be on the injector side of the engine. No gas leak was found by Crescent. Rossi was so informed when he picked up his car on July 16, 1970 and drove it home.
The car was placed in the garage and not used again until the day of the fire, July 20, 1970. On that morning Rossi desired to drive across the Pontchartrain Causeway. The gas tank was filled with some 17 or 18 gallons of gasoline at a service station prior to entering the Causeway. At a point approximately nine miles from the toll gate on the southern shore of Lake Pontchartrain Rossi smelled an intense odor of gasoline inside the passenger compartment. Noticing fire on the roadway leading back from the vehicle, he stopped the car as rapidly as he could. He then proceeded to open the hood observing fire and flame in the engine compartment. Rossi was unable to reach a fire extinguisher in the trunk of the car. The fire spread and plaintiff "retreated." The car was totally destroyed.
Rossi's vehicle was insured by Federal for a stated value of $8,500.00 which was paid to Rossi. Rossi sued Crescent for other uninsured losses as follows: (a) value of car above payment by Federal in the amount of $1,386.00; (b) loss of personal property in the car valued at $111.75; and (c) mental pain and suffering of $13,000.00. Federal intervened in that suit for $8,500.00 and filed a separate suit against Mercedes. The two suits were consolidated for trial.
After a trial of three days, the district court rendered judgment dismissing the claims of Rossi and Federal. The court made the following findings of fact: "1) Mr. Frois indicated to the plaintiff, Mr. Grossel-Rossi, that they could not find any gasoline leak. 2) the service station attendant had difficulty in closing (locking) the cap on the gas tank. 3) the fire in the roadway was back 75 to 100 feet and was 1 foot to 2 feet high. 4) there was a sudden odor of gasoline after going over a bump. 5) as soon as the odor was detected there was a sudden stop. 6) after the fire the gas tank had an extensive bulge. 7) the damage to the car, under the hood, was more extensive on the right side than on the left side. 8) by opening the hood the flame was furnished additional oxygen. 9) the inside of the trunk area had the least *722 fire. 10) the tank served as a heat barrier as far as the trunk of the car was concerned. 11) the gasoline tank was vented. 12) the inferno was greater under the tank than any other place." The district court concluded "* * * the cap on the gas tank was loose, gasoline spilled out and was ignited by the exhaust. The trail of fire on the roadway resulted from the above described chain of events." We affirm.
Rossi and Federal contend the district court erred in its findings and in failing to hold Crescent negligent. Federal further contends that the proximate cause of the fire which resulted in the loss was caused from a manufacturing defect attributable to Mercedes.
Did Rossi and Federal carry their required burden of proof? Our jurisprudence is clear. To be awarded a judgment in a case such as this, a plaintiff is required to prove the following: (1) the repairman was negligent in making the repairs; (2) a causal relationship between the negligent repair work and subsequent accident; and (3) the negligence of the repairman was the proximate cause of the accident. See Lewis v. Travelers Insurance Company, 247 So.2d 635 (La.App. 3 Cir. 1971); Foy v. Ed Laussig, Inc., 220 So.2d 229 (La.App. 3 Cir. 1969). Rossi and Federal have failed to meet the jurisprudential test.
Plaintiffs rely on the testimony of George Pappas, an expert in chemical engineering and automobile fire investigation. Pappas theorized that the fire had to have been caused by a relatively large leak in one of the gasoline lines leading to the fuel injection system. He stated that the hottest area of the fire was the left side of the engine around the fuel injection pump because this is the side on which the aluminum cam cover had melted. He rationalized that this was the hottest area of the fire and most probably the area in which it started. While Mr. Pappas is of the opinion that the fire must have been caused by a large leak in one of the gasoline lines, he testified that after the fire he inspected the car and found no gasoline lines that were cracked or disconnected. We also note Mr. Pappas agreed that if an undercoating of an automobile were to ignite, that with a rear wind the fire might spread to the front end of the automobile.
Rossi testified that when he stopped the car on the Causeway, got out and opened the hood, there were flames extending back 75 to 100 feet in the roadway about a foot and a half wide and some two feet high. It was his statement that the fire was in the vicinity of the fuel injection pump and there were flames at that time on the passenger side of the engine. He further stated that at the time he stopped the car and opened the hood he left the motor running.[1] Rossi further testified that Mr. Frois, Crescent's service manager, informed him that he could find no gas leak. He also stated he was exceptionally fond of his car and dutifully checked his vehicle frequently at night before going to bed. Particularly would he check the engine compartment as well as the whole car before leaving the city on any trip. Rossi also testified that he had removed and replaced the gas cap at the station where the car was filled with gasoline before entering the Causeway. Therefore, he argues, the trial judge could not conclude that the gas station attendant had trouble with the gas cap.
Rossi called under the act George L. Pratt the mechanic from Crescent who worked on the car. He testified as to the inspection of the vehicle for gasoline leaks. He stated that the car was checked while not operating, while stopped with the key in the "on" position, and with the engine *723 running. All gasoline lines were checked by feeling around and visually inspecting them. He checked all connections with a wrench to make sure that all connections to the fuel system were tight and in proper order. He testified that he took the car for a test run on the Pontchartrain Expressway and returned to Crescent. He repeated the checks for a gas leak with the aid of his father, John Pratt, the shop foreman. He stated that at no time did he smell a gasoline odor coming from the car.
Detlev H. Heinan, manager of technical services for Mercedes-Benz of North America in the United States and Canada testified. He thoroughly rebutts Pappas' theory. Heinan theorized that the gas cap was possibly loose and gas spilled out of the car from the vacuum created from moving at 60 mph. The gas fell on the hot exhaust pipe thereby igniting it. According to Heinan, the gas could possibly then have rushed forward as plaintiff attempted to stop his vehicle when he noticed the flames behind the car. He testified that perhaps the cap didn't have the proper connection after Mr. Rossi left the gas station because these caps are somewhat more difficult to replace than others. He explains this by the fact that the cap itself is not vented, as Mr. Pappas so stated, but the entire tank is vented through the use of an expansion tank in the trunk.
Next to testify was Elliott Evans owner of a local garage who deals with Mercedes-Benz. He testified as to the checks he would have used in order to find a gasoline leak upon a complaint of odor such as Rossi's, i.e., visually inspect the gasoline lines and fittings, check them for tightness with a wrench, and check the fuel system.[2] He further testified that a leak could erupt within 20 miles in one of the more flexible hoses of the fuel system. This testimony however was rebutted by Mr. Heinan who, after explaining the makeup of the hose, thought it highly impossible that such a hole could erupt in so short a space of time. No evidence of such a hole was produced.
After careful review of the record we are constrained to say that plaintiff has proved nothing more than a possible theory under which the accident which resulted in the burning of his car could have occurred. There is no clear evidence to support Rossi nor Federal's possible theory.
In Romero v. Butcher Air Conditioning Company, 255 So.2d 132 (La.App. 3 Cir. 1971) the court set forth the governing evidentiary principle for a successful action against a repairman at page 134:
"The general rule is that negligence is never presumed, and that the burden of proving negligence by a preponderance of the evidence rests on the party alleging it. Grey v. Nathan, 221 So.2d 859 (La.App. 1 Cir. 1969); Crier v. Marquette Casualty Company, 159 So.2d 26 (La.App. 4 Cir. 1963); Oliver v. Pitarro, 129 So.2d 39 (La.App. 2 Cir. 1961).
"Negligence may be proved by direct or by circumstantial evidence. A plaintiff relying upon circumstantial evidence, however, must exclude, with a fair amount of certainty, every other reasonable hypothesis but that the damages claimed resulted from the negligence of the defendant. United States Fidelity and Guaranty Company v. Hyams, 238 So.2d 750 (La.App. 3 Cir. 1970); McFatter v. Welch, 205 So.2d 607 (La.App. 3 Cir. 1967); Gassiott v. Gordey, 182 So. 2d 170 (La.App. 3 Cir. 1966); Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963)."
Employing the hereinabove set forth principle, so well imbedded in our jurisprudence, we conclude as the trial judge apparently did, that Rossi and Federal have failed to exclude with any degree of certainty the hypothesis suggested by the defendant as to the cause of the fire. Further, plaintiffs' evidence is grossly insufficient *724 and fails to preponderate that Crescent was negligent. Rossi and Federal have woefully failed to definitively establish what caused the fire, much less that an act of omission or commission, which possibly could have been the proximate cause of the fire, is attributable to any negligence or breach of warranty on the part of Crescent.
The law regarding Mercedes' liability to Federal is stated in Weber v. Fidelity & Casualty Insurance Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971) at page 755:
"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect."
The record is devoid of any evidence to support Federal's contention of a manufacturing defect in the vehicle. To the contrary, all the testimony relates to numerous possible causes of the fire other than negligence or a breach of warranty on the part of Mercedes. See Eversmeyer v. Chrysler Corporation, 192 So.2d 845 (La.App. 4 Cir. 1966).
After our careful review of the record, the theories advanced by plaintiffs and defendants and the evidence in support of them, we cannot disagree with the district court's findings of fact and find no manifest error in the conclusions of the court below.
For the foregoing reasons the judgment of the district court is affirmed.
Affirmed.
NOTES
[1] This Mercedes 280SL was equipped with an electric fuel pump which would begin pumping gasoline to the engine when the ignition key was placed in the "on" position. In the "on" position the electrical system, which operated the pump, functioned and the fire was thereby fed as long as the key was in an "on" position whether or not the engine was running.
[2] These are the same checks which George Pratt testified he made.