**Larry SWEENEY and Southland Mobile Homes, Inc., Plaintiffs-Appellees, Cross-Appellants,**

v.

**VINDALE CORPORATION, Defendant-Appellant, Cross-Appellee.**

No. 76–2800.

United States Court of Appeals, Fifth Circuit.

June 14, 1978.

---

Jarrell E. Godfrey, Jr., New Orleans, La., for defendant-appellant, cross-appellee.

Emile J. Dreuil, Jr., New Orleans, La., for plaintiffs-appellees, cross-appellants.

Before TUTTLE, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

Plaintiffs, Larry Sweeney and Southland Mobile Homes, Inc., filed suit on March 4, 1974, against Vindale Corporation. Plaintiffs alleged they incurred damages resulting from defendant's poor construction of two mobile homes plaintiffs had purchased. After a non-jury trial, the district court rendered judgment for plaintiffs in the amount of $26,912.56 (the total price paid for the two mobile homes plus shipping charges and interest) plus interest from the date of judicial demand and attorney's fees. Defendant appeals the judgment for plaintiffs. Plaintiffs cross-appeal and seek an increase in attorney's fees awarded. We modify and affirm the judgment of the district court as to the main claims and remand for further proceedings on the question of attorney's fees.

In December, 1973, Southland tendered the two mobile homes to Vindale for rescission of the sale. Vindale made a less than satisfactory settlement offer which plaintiff refused to accept. Suit was filed on March 4, 1974.

The courts of Louisiana, when confronted with a suit seeking to rescind the sale of a mobile home, treat such actions as one in redhibition rather than breach of contract.[1]

> Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.

La.Civ.Code Ann. art. 2520 (1870).

We first consider defendant's contention that the plaintiffs' redhibition action with respect to Unit A–1195, the first mobile home delivered, was barred by the statutory prescription period. The prescription period for redhibitory actions is one year, from the date of sale, La.Civ.Code Ann. art. 2534, or a year after the discovery of a vice of which the seller is already aware, La.Civ.Code Ann. art. 2546.

Following these statutes it is apparent suit for redhibition or rescission of the sale of A–1195 was filed after the one year prescription period. The defects were discovered by October 23, 1972, and suit was not filed until March 4, 1974. However, the Louisiana courts have "recognized that where the seller has attempted to remedy the defect, prescription does not begin to run until the seller abandons his attempt to repair the defect." *Dominque v. Whirlpool Corporation,* 303 So.2d 813, 815 (La.App. 3d Cir. 1974). This exception has not been limited to actual physical attempts to remedy the defect but includes verbal or written communications which lead a buyer to believe the defects will be remedied. See *Weaver v. Fleetwood Homes of Mississippi, Inc.,* 327 So.2d 172, 176–177 (La.App. 3d Cir. 1974).

In May, 1972, Larry Sweeney and his wholly-owned corporation, Southland Mobile Homes, Inc. became an authorized dealer of mobile homes manufactured by Vin-

---

1. *Ticheli v. Silmon,* 304 So.2d 792 (La.App. 2d Cir. 1974); *Baughman v. Quality Mobile Homes, Inc.,* 289 So.2d 376 (La.App. 1st Cir. 1973); *Hebert v. Big Jim's Inc.,* 241 So.2d 84 (La.App. 3d Cir. 1970).

dale. Plaintiffs ordered two mobile homes from Vindale. The first, Unit A–1195 was delivered to Southland's lot on October 16, 1972, and the second, Unit A–1430, was delivered on March 2, 1973.

Several days after delivery of A–1195, two Vindale representatives, Earl Davis and Merle Metcalf, went to Southland and supervised and assisted Sweeney and his employees in setting up the home. A–1195 was not a typical mobile home. It contained an "expando" unit which is an additional room that slides out of the main body of the trailer increasing the width beyond the highway limit. A–1195 also contained a "walkabay" which is a smaller fold-out expanding portion of the mobile home which, in its expanded position, is a bay window that extends beyond the trailer's highway width.

The night after the first unit was set up, it rained. The next morning, Sweeney checked the home and discovered water damage to the interior furnishings, flooring and wall paneling due to leaks in the home. Southland made attempts to repair the leaks but was largely unsuccessful.

About two weeks after Unit A–1430 was delivered to Southland, it rained. Besides the leaks which appeared in the master bedroom, kitchen, back bedroom, around the floor and at the bathroom vent, the frame of the unit bulged and sagged. Unit A–1430 had two walkabays but they were never moved out into position.

After the leaks in A–1195 were discovered, Sweeney and his wife made numerous attempts to have Vindale come and repair the leaks and resulting damage the water caused. Sweeney testified:

Q. What effort, if any, Mr. Sweeney, did you make to have Vindale solve your problems with 1195?

A. I made a number of phone calls to the Oklahoma Plant of Vindale, and I had my wife place a number of phone calls for me. I was having some problems getting in touch with seemingly the proper people, because I couldn't get anything done it.

Q. Over how long a period of time did you make these calls?

A. Well, up until when they broke off the relationship with me, I called them on it. Which would be in August of '73.

Q. How many times do you think you called?

A. Oh, Jesus, I called, I will say at least 25 times.

Q. Did you ever talk with anybody at the factory?

A. I eventually got to speak with people, yes, I spoke to a man by the name of Mr. Campbell, who was the service manager there. And I spoke to Merle Metcalf, and another gentleman that took over his position. And I spoke to him and John Luehrs, about the problem. I spoke with a number of people there.

Q. And what did these men tell you?

A. Well, they kept promising me that they were going to send these people down to straighten my unit out, as they put it, and send the material. Which I didn't get.

Q. Did they send any service people out to your place?

A. Yes, they sent two factory service representatives, not to work on my homes, however, but they came to my lot to get directions to go and work on another unit which they were having problems with that I sold. But I asked them, whenever they came to the yard, if they would do the repair work on the unit that I've got there in stock. They said the only thing they could do was the work that they had scheduled for them; in other words, work orders that they had scheduled, in other words.

Q. And this did not include your unit?

A. No, it did not.

(Transcript pp. 127–128).

The court below found that "[i]t was not until at least late March 1973 that defendant abandoned its attempts to advise plaintiffs how to correct the defects." App. p. 9. We do not believe this finding to be unrea-

sonable or without basis. Testimony at trial indicated in late March of 1973, Vindale sent two repairmen to New Orleans to repair a mobile home already sold to a retail customer. The repairmen stopped by Southland and borrowed a part of one of the damaged mobile homes promising to send a replacement part. The repairmen were also shown the two mobile homes in question and, although they could not work on them without a work order, they did give the Sweeneys a few suggestions for stopping the leaks. Tr. 283. The additional specific testimony of Sweeney (set out above), which was only generally denied by the defendant,[2] that promises were made until the dealership relationship was terminated in August, 1973, also supports the trial court's finding. The trial court's conclusion that the claim with respect to Unit A–1195 was filed within the prescriptive period is not clearly erroneous.

 Vindale next asserts that the plaintiffs failed to prove that the two mobile homes contained defects which existed prior to each sale due to improper construction by Vindale and, therefore, the trial court's finding to that effect was clearly erroneous. Louisiana law states:

> The buyer who institutes the redhibitory action must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.

La.Civ.Code Ann. art. 2530 (1825). The Louisiana courts have additionally held that even if the defect appears more than three days after the sale, a reasonable inference may arise, in the absence of an intervening cause or other explanation, that the defect existed at the time of sale. *Ticheli v. Silmon,* 304 So.2d 792, 797 (La.App. 2d Cir. 1974). The court below found:

> The defects in the mobile homes were the result of faulty workmanship on the part of Vindale, primarily as the result of the failure to properly caulk screws,

joints, flashing and trim. The I-beams in both units even with the metal supports Vindale had added were too weak to support the weight of the units. This weakness caused the bulges. Vindale salesmen, Earl Davis and Merle Metcalf, were negligent in their supervision and assistance to Southland in setting up the expando room of Unit A–1195. In late March 1973, Vindale also borrowed a ten foot strip of guttering from Unit A–1195 to repair another defective home Vindale had sold to a third party through Southland. The failure to replace this guttering, even after repeated requests by Southland, aggravated the leaks in Unit A–1195.

App. p. 7.

Rule 52 of the Federal Rules of Civil Procedure states in part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The Supreme Court has stated:

> A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). A review of the record reveals there is evidence to support both the above findings or to support Vindale's contention that the majority of the damage was due to leaks caused by the dealer's faulty installation of the expando and walkabay units. It was for the trial court to choose between possible alternatives, and we are not convinced the trial court made a mistake.

 Vindale next asserts that even if the defects were due to improper construction and existed prior to sale, the defects did not render the units "either absolutely useless,

---

**2.** None of the employees named by Sweeney were presented by the defendant to refute Sweeney's testimony of continuing promises.

or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice," La.Civ.Code Ann. art. 2520, and, therefore, plaintiffs were only entitled to recover damages in the amount of cost to repair.

In *Prince v. Paretti Pontiac Company, Inc.,* 281 So.2d 112 (La.1973), the Supreme Court of Louisiana held that:

> The notion that easily repaired defects do not support redhibition is not found in our statutory law. . . .
>
> Thus, to prevail in an action for redhibition, a purchaser need not prove that the alleged defect is difficult to repair. [Footnote omitted].

Id. at 116. *Prince* further states that a plaintiff bears the burden of proving either that the defect makes the product "absolutely useless" or "so inconvenient or imperfect" that the buyer would not have bought it if he had had knowledge of the defect. La.Civ.Code Ann. art. 2520.

The testimony and exhibits show that these two mobile homes were purchased by plaintiffs for resale to the public as new quality mobile homes. The defects which appeared resulted in substantial damage to both units. Southland's attempts to repair the defects were ineffective and coupled with Vindale's failure to correct as promised, resulted in further damage to the units. The court below found that the extent and nature of the defects and damage made the mobile homes unsaleable which is a permissible conclusion under these facts. It is clear that if the plaintiffs had known of the defects they would not have purchased these mobile homes. Plaintiffs were expecting to purchase brand new mobile homes of high quality for resale and not homes that would need extensive repairs before they would have any resale value whatsoever.

The trial court properly voided the sale (granted redhibition) and awarded the plaintiffs damages which included the invoice cost of each unit, freight, the cost of insurance paid on the units and interest through the date of trial. However, through an apparent oversight, the court below did not order the return of the units to Vindale. We, therefore, affirm the award of damages to the plaintiffs but modify the judgment to include the return of both mobile homes to the defendant.

Plaintiffs have cross appealed on the alleged inadequacy of the award of attorney's fees by the court. The court awarded $2750. Plaintiffs' counsel alleges he spent 161¾ hours on this case which would be compensation at a rate of $17.00 per hour. Counsel seeks an increase to $5660 or $35.00 per hour.

The Fifth Circuit has laid down numerous factors that must be considered by the trial court in determining an award of reasonable attorney's fees. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). This Court also held that the manner in which these elements influenced the attorney's fees award must be elucidated by the trial court. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974). See also *Miller v. Mackey International, Inc.,* 515 F.2d 241 (5th Cir. 1975); *Mims v. Wilson,* 514 F.2d 106 (5th Cir. 1975); *Evans v. Seaman,* 496 F.2d 1318 (5th Cir. 1974). The trial court stated only that it relied upon the factors set out in *Johnson* without setting forth its reasons or findings. In this appeal, plaintiffs raise the issue but the defendant did not respond.

Without more we cannot presume to determine whether the trial court abused its discretion in awarding what, on its face, would seem to be an inappropriately low fee when compared to the number of hours alleged. We, therefore, remand to the district court for findings with respect to the *Johnson* elements.

AFFIRMED IN PART, MODIFIED AND REMANDED.