STOULIG, Judge.
Plaintiff, Ferdinand Andrews, was injured in a slip-and-fall accident in a railroad gondola freight car as he prepared to assist in unloading a cargo of steel rails packed in open-end, 55-gallon metal drums. He sued the rail shipper and three of the four railroad companies involved in moving the car from its point of origin in Colorado to its final destination at the Nashville Avenue wharf in New Orleans.
*259 On April 16, 1975, the Colorado and Wyoming Railway Company (C. & W.)[1] accepted the Missouri Pacific owned solid bottom gondola car from the C.F. & I. Steel Corporation at Manitowac, Colorado. The car was loaded by C.F. & I. The C. & W. hauled the car one-half mile to the first connecting carrier’s line, The Denver and Rio-Grande Western Railroad Company (D. & R.G.W.). Next the D. & R.G.W. moved the car three miles to Pueblo, Colorado, and from there the Missouri Pacific Railroad hauled the car approximately 1200 miles to its New Orleans terminal. On April 25, 1975 at 7 p. m., Missouri Pacific released the car to the New Orleans Public Belt Railroad which brought it to the dockside. The accident occurred four days later on April 29, 1975.
After a trial on the merits, the district judge found the combined negligence of C.F. & I. and the Missouri Pacific caused the oil slick on the gondola floor upon which plaintiff slipped. It awarded $30,137.32, casting both defendants as solidary obligors along with the shipper’s insurer, American Home Assurance Company. The suit against C. & W. was dismissed because it had only hauled the car a short distance and the D. & R.G.W. was dismissed on a declina-tory exception to the court’s jurisdiction over it.
Plaintiff’s employer, Interocean Steve-doring, Inc., and its workmen’s compensation insurer, Employers National Insurance Company, intervened under R.S. 23:1101 and 1103 to have recognized its lien for $5,832.85 workmen’s compensation benefits paid to plaintiff for the injuries forming the basis of this suit.
Defendants C.F. & I., its insurer and Missouri Pacific have appealed. Plaintiff answered the appeal to have C. & W.’s dismissal reversed and the intervenors appealed to have their judgment recast to recognize their lien against the award rather than to render judgment against the plaintiff as decreed in the judgment. All litigants concede the amendment in favor of intervenors should be made.
Appellants argue that the plaintiff failed to prove the negligence alleged against both C.F. & I. and Missouri Pacific by either direct or circumstantial evidence sufficient to establish a prima facie case. They correctly contend negligence may never be presumed, citing Gray v. Nathan, 221 So.2d 859 (La.App. 1st Cir. 1969); Crier v. Marquette Casualty Company, 159 So.2d 26 (La.App. 4th Cir. 1963). It may be established by direct or circumstantial evidence.
Our law recognizes the fact that a plaintiff is not always in a position to establish allegations of negligence by testimonial proof. In some instances justice is better served when the defendant is obliged to explain and develop the facts upon which conclusions of negligence must be based. The evidentiary doctrine of res ipsa loquitur illustrates this point and as was noted by the court in Percle v. St. Paul Fire & Marine Ins. Co., 349 So.2d 1289 (La.App. 1st Cir. 1977), it is applied when “ * * * the facts of the occurrence warrants an inference of negligence * * * grounded on the principle that such instances do not commonly occur in the absence of negligence * * Res ipsa, a rule of circumstantial evidence (Meyer v. St. Paul-Mercury Indemnity Co., 73 So.2d 781 [La. 1953]), is inapplicable to our facts because the instrumentality that caused damage to plaintiff was not exclusively within the control of any one of the defendants. See Alexander v. St. Paul Fire & Marine Insurance Co., 312 So.2d 139 (La.App. 1st Cir. 1975). If we could apply res ipsa loquitur, we could affirm the trial court’s finding of liability.
However, the facts of this case require our application of the rule that a plaintiff relying on circumstantial evidence must exclude with fair certainty other reasonable hypotheses except that the damages claimed resulted from the negligence of the defendant. See Federal Insurance Company v. Cinnater, 305 So.2d 720 (La.App. 4th *260 Cir. 1974), and Romero v. Butcher Air Conditioning Company, 255 So.2d 132 (La.App. 3rd Cir. 1971).
When we review the evidence before us in the light of the rules of negligence discussed, we conclude the judgment favoring plaintiff should be reversed because the proof fails to rule out to a reasonable degree of probability any other causes for the foreign substance’s presence on the floor.
A glaring omission in the chain of proof offered to hold the shipper and the Missouri Pacific liable is the failure to cite as a defendant the last carrier, New Orleans Public Belt Railroad, to whom the gondola car was released by Missouri Pacific four days before the accident. Parked dockside for several days the open-top car was exposed to the elements and accessible to others. The oily substance on the flooring could have been introduced into the car in any number of ways.
The trial court in verbal reasons for judgment stated:
“ * * * The record reflects that the Petitioner suffered the injuries described in the medical report and his testimony was the result of slipping on a foreign substance which the Court determines to be a greasy or oily type substance which was on the floor of the open gondola in which the described merchandise of joint bars or angle bars were being shipped.

“When did the oil or greasy substance from the joint bars which was testified to • was in the process of being added to the joint bars or the joint bars being dipped into oil or grease for the sake of preservation? When did that oil or grease seep on the floor bed of the gondola?”
The trial court concluded the oil on the floor emanated from the bars and was the preservative substance in which they were dipped prior to shipment. On this conclusion, based on circumstantial evidence, the finding of liability ultimately rests.
The plaintiff failed to introduce any evidence to support its theory that the oil on the car floor came from the iron rails packed in the barrels. Plaintiff testified that he stepped into the car along with George Lafargue to estimate how they would unload the cargo. After walking several feet in a narrow aisle flanked by metal drums on both sides, he slipped in a greasy substance falling backward and severely cutting his upper torso. Plaintiff understandably did not stay on the scene to investigate the source of the oil. However, after his medical requirements were met, his coworker George Lafargue, who appeared as a witness, unloaded the iron rail cargo with the assistance of another man. The rails were protruding from the drums and had they been oily enough to leave grease dripping on the floor throughout the entire car, as Kenneth Merrick, assistant wharf superintendent, attested, it would seem Lafargue or Merrick would have noticed the greasy conditions of the unloaded steel joints and barrels if, in fact, there was an oily substance emanating from the cargo.
The only testimony that touched on the possibility of an oily coating was that of George Simony, a C. & W. vice president who sometimes observes the loading of cargo by C.F. & I. but did not do so with this particular shipment. He explained rails are customarily soaked in oil prior to shipment to preserve the material; however, he explained the liquid is absorbed so that it leaves a light coating that does not drip and that if someone ran a finger over the material, he would probably pick up an oil smudge.
All the railroad personnel who testified explained they would not have accepted this cargo if it were not safely transportable and the fact that no line’s rejection appears in the waybill evidences it was received by all in good condition. We are not overly impressed with these assertions and certainly would not base a reversal on this evidence. This is noted to point out there is nothing in the testimony on routing that helps rule out other reasonable explanations of how the grease came to be on the floor when plaintiff fell. Were we dealing with *261 an enclosed and sealed boxcar that had remained closed from the point of origin to the time when plaintiff entered to unload, the circumstances would in and of themselves obviate a need to exclude other possible theories of fault. However, this is not the case. The evidence is insufficient to support the factual conclusion of the trial court that the oil on the floor emanated from the rails and therefore we reverse its judgment. Arceneaux v. Domingue et al., 365 So.2d 1330 (La.1978).
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff’s suit and the petition of intervention be dismissed. Plaintiff is to pay all costs.
REVERSED AND RENDERED.

. The Colorado & Wyoming Railway Company is a totally owned subsidiary of C.F. & I. Steel Corporation with its own board of directors and its own officers.